**Kristin L. JOHNSON, Respondent,**

**v.**

**PIPER JAFFRAY, INC., a wholly owned subsidiary of Piper Jaffray Companies, Appellant.**

No. C4-93-2270.

Court of Appeals of Minnesota.

May 10, 1994.

Review Granted July 27, 1994.

Sue B. Stingley, Leslie L. Lienemann, Sue B. Stingley Law Offices, Minneapolis, for respondent.

Carol A. Peterson, Kathleen D. Sheehy, Sonja G. Lemmer, Dorsey & Whitney, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and AMUNDSON and MULALLY, JJ.

## OPINION

EDWARD D., MULALLY, Judge.*

The employer appeals the district court's refusal to compel arbitration of the employee's discrimination claim against the employer. The employer argues that recent federal court decisions and the plain language of the arbitration agreement signed by the employee require arbitration of the employee's claim. We agree and reverse.

## FACTS

In March 1992, Kristin Johnson was hired by Piper Jaffray (the employer) to become a bond trader. A few weeks later, she completed the "U–4 form," an application for securities industry registration. In June 1992, the employer terminated Johnson's employment. Johnson had not yet become a registered bond trader.

In April 1993, Johnson filed a sex and age discrimination suit against her employer in Hennepin County District Court. The employer moved for an order compelling arbitration. The district court denied the motion. The employer appeals from the order denying the motion to compel arbitration.

## ISSUES

I. Does Minnesota law permit an employee to be subject to compulsory arbitration of a discrimination claim against the employer?

II. Did the employee's execution of the U–4 form bind her to compulsory arbitration of the discrimination claims against her employer?

## ANALYSIS

▪ The district court's denial of the motion to compel arbitration is reviewed de novo by this court. *Michael–Curry Co. v. Knutson Shareholders Liquidating Trust,* 449 N.W.2d 139, 141 (Minn.1989), *aff'd,* 449 N.W.2d 143 (Minn.1989).

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## I.

▪ Minnesota public policy favors arbitration as an informal and inexpensive means of resolving disputes between parties whose contract includes an arbitration clause. *Schmidt v. Midwest Family Mut. Ins. Co.,* 413 N.W.2d 178, 180 (Minn.App.1987), *aff'd,* 426 N.W.2d 870 (Minn.1988). If there is an agreement to arbitrate, a court must order the parties into arbitration and stay any judicial action pending arbitration. Minn.Stat. § 572.09(a), (d) (1990). Minnesota law specifically permits the enforcement of arbitration agreements between employers and employees. Minn.Stat. § 572.08 (1990).

▪ This court has previously held that an employee cannot be required to arbitrate discrimination claims under the Minnesota Human Rights Act against the employer. *Anderson v. Dean Witter Reynolds, Inc.,* 449 N.W.2d 468, 469 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 8, 1990). In reaching this conclusion, the *Anderson* court relied on *Swenson v. Management Recruiters Int'l, Inc.,* 858 F.2d 1304, 1305 (8th Cir.1988), *cert. denied,* 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989), which in turn was based on a decision of the United States Supreme Court.

The Supreme Court decision held that a plaintiff who had submitted to arbitration under a collective bargaining agreement had not given up the option to bring a Title VII claim in federal court. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974). In *Anderson,* we gave great weight to the federal case law in the area of discrimination because the Minnesota Human Rights Act appears to be modeled after Title VII. *Anderson,* 449 N.W.2d at 469.

A year after this court's decision in *Anderson,* the United States Supreme Court held that age discrimination claims under the Age Discrimination in Employment Act (ADEA) are subject to compulsory arbitration. *Gilmer v. Interstate/Johnson Lane*

pointment pursuant to Minn. Const. art. VI, § 10.

*Corp.,* 500 U.S. 20, 35, 111 S.Ct. 1647, 1657, 114 L.Ed.2d 26 (1991). In *Gilmer,* the plaintiff, a registered securities representative, alleged that the employer had fired him because of his age. He argued that, under the Supreme Court's decision in *Alexander,* he could not be subject to compulsory arbitration. *Id.* at 23–27, 111 S.Ct. at 1651–52.

The Supreme Court, however, distinguished *Alexander* on several grounds: (1) The *Alexander* plaintiff's arbitrated claim was contractual and differed from the Title VII claim he was permitted to pursue in federal court. In *Gilmer,* the claim to be arbitrated and the ADEA claim were the same. (2) The *Alexander* opinion reflected concern that an individual's interest would get lost in the collective bargaining process. No such concern was present in *Gilmer.* (3) *Alexander,* unlike *Gilmer,* was not decided under the Federal Arbitration Act and did not involve agreements to arbitrate. *Gilmer,* 500 U.S. at 33–36, 111 S.Ct. at 1656–57.

Since *Gilmer,* several federal circuit courts have held that Title VII claims are subject to compulsory arbitration. *See, e.g., Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992) (noting that since *Gilmer,* the Fifth, Sixth, and Ninth Circuits have held that Title VII claims are subject to compulsory arbitration agreements). A decision of the Fifth Circuit is especially instructive. *See Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir.1991). In *Alford,* the plaintiff stockbroker brought a Title VII claim against her employer, a brokerage firm. *Id.* at 229. The district court declined to compel arbitration and the Fifth Circuit affirmed. *Id.* On petition for certiorari, the United States Supreme Court vacated the Fifth Circuit judgment and remanded the case for consideration in light of the Court's decision in *Gilmer. Alford,* 939 F.2d at 229. On remand, the Fifth Circuit concluded that, under *Gilmer,* Title VII claims could be subjected to arbitration. *Alford,* 939 F.2d at 229–30.

We agree with the *Alford* court that *Gilmer* permits the compulsory arbitration of discrimination claims against the employer. As we noted before, we give strong weight to federal court interpretations of Title VII

claims when construing the Minnesota Human Rights Act because the Act is modeled on Title VII. *Anderson,* 449 N.W.2d at 469. We therefore adopt the reasoning in the *Gilmer–Alford* line of cases and hold that, under the Minnesota Human Rights Act, an employee may be subject to compulsory arbitration of discrimination claims against the employer.

Johnson argues that this holding constitutes a waiver of her claim and that the Human Rights Act prohibits such waivers. We do not decide now whether an employee who has arbitrated a discrimination claim against the employer can then bring a lawsuit in court on the same claim. That issue must wait for consideration another day.

## II.

■ The employer argues that Johnson is subject to compulsory arbitration because she signed an application form agreeing to arbitrate any dispute against her employer.

The U–4 form provides in relevant part:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [NYSE and NASD].

The form also provides in relevant part that Johnson agrees to be bound by the rules of securities organizations:

I apply for registration with the jurisdictions and organizations indicated * * * and, in consideration of the jurisdictions and organizations receiving and considering my application, *I submit to the authority of the [NYSE and NASD]* and agree to comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the [NYSE and NASD].

The plain language of the U–4 form indicates that Johnson agreed to arbitrate any dispute that arose between her and her employer.

Johnson argues, however, that she could not be required to arbitrate because she had not yet completed the registration process.

The U–4 form, however, provides that she submits to the authority of the securities organizations while she is undergoing the registration process. A federal district court that considered this issue has ruled that, even if an applicant does not complete the registration process, the plain language of the U–4 form requires the applicant to arbitrate discrimination claims against the employer. *Foley v. Presbyterian Ministers' Fund,* 1992 WL 63269, at *1, 1992 U.S.Dist. LEXIS 3572, at *3 (E.D.Pa. Mar. 19, 1992). Although this opinion is not binding, we find its reasoning persuasive.

Johnson next argues that the U–4 form only requires her to arbitrate her claims if the NYSE and NASD rules would normally require her to arbitrate such claims. In other words, if the NYSE and NASD rules do not normally require an applicant to arbitrate claims against the employer, then she is not required to arbitrate this claim.

The NYSE and NASD rules cited by the parties do not specifically require arbitration of claims by applicants, but neither do they forbid it. Even so, we believe that the U–4 form standing alone requires Johnson to arbitrate her claim, regardless of what the NYSE and NASD rules provide. Accordingly, we conclude that Johnson must arbitrate her claim with her employer, and we remand to the district court for proceedings consistent herewith.

**Reversed and remanded.**