A.J. LIGHTS, LLC, Respondent,

v.

SYNERGY DESIGN GROUP, INC., a
Florida Corporation, Appellant.

No. A04–809.

Court of Appeals of Minnesota.

Jan. 18, 2005.

Michael C. McCarthy, Dawn C. Van
Tassel, Maslon Edelman Borman & Brand,
L.L.P., Minneapolis, MN, for respondent.

Jack E. Pierce, Pierce Law Firm, Minneapolis, MN, for appellant.

Considered and decided by
KALITOWSKI, Presiding Judge;
ROBERT H. SCHUMACHER, Judge;
and CRIPPEN, Judge.*

## O P I N I O N

KALITOWSKI, Judge.

Respondent A.J. Lights, LLC, brought
an action against appellant Synergy Design Group, Inc., alleging wrongful termination in violation of the Minnesota Termination of Sales Representatives Act

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

(MTSRA), breach of contract, and a number of other claims. Appellant requested that the district court compel arbitration in Florida in accordance with the terms of the parties' written contract. Appellant challenges the district court's order denying appellant's motion to compel arbitration, arguing that the district court erred by refusing to uphold the parties' agreement to arbitrate. The district court held that the MTSRA allows a sales representative who has agreed to arbitration the option to bring a claim in district court.

## FACTS

Respondent A.J. Lights, LLC, is a Minnesota company with its principal place of business in Hennepin County. Appellant Synergy Design Group, Inc., is a Florida corporation with partial ownership in a product known as the 360 Turbo Flare. On January 25, 2003, the parties entered into a written sales-representative's agreement under which appellant would pay respondent, the sales representative, a ten percent commission on sales of the 360 Turbo Flare product to identified, protected accounts.

The agreement contained an arbitration provision that stated "that arbitration shall be the sole remedy available under this Agreement" for "[a]ny dispute or difference between the parties with regards to the validity, interpretation, application, breach or affect of this Agreement, as well as any sums due or claimed to be due hereunder."

The sales-representative's agreement was to remain in effect for one year, beginning January 25, 2003, and, absent notice of intent not to renew, the agreement would automatically renew for consecutive terms of one year. On November 11, 2003, appellant advised respondent by electronic mail that appellant was immediately terminating the agreement "for

cause"; that commission payments would cease immediately; and that the agreement would not be renewed. Respondent then sued appellant in Minnesota district court, alleging wrongful termination under the MTSRA. Appellant brought a motion to stay the proceedings and compel arbitration pursuant to the contract's arbitration provision. The district court denied appellant's motion, and held that the MTSRA gave respondent the option to bring an action in district court prior to an arbitration hearing.

## ISSUE

Does the MTSRA supersede a contractual arbitration agreement by allowing a sales representative to file a claim in a court of law prior to arbitration?

## ANALYSIS

This court reviews the district court's denial of a motion to compel arbitration de novo. *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn. 1995). "[A]n agreement to arbitrate a statutory claim is enforceable only if (1) the agreement encompasses the statutory issues and (2) 'legal constraints external to the parties' agreement' do not preclude arbitration of the claim." *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 443 (Minn.2000) (citation omitted).

The parties do not dispute that respondent is a "sales representative" under section 325E.37 of the MTSRA. *See* Minn. Stat. § 325E.37, subd. 1(d) (2002). Thus, the issue presented here is whether an additional "legal constraint," specifically section 325E.37 of the MTSRA, precludes arbitration of respondent's claims. Questions of statutory construction are legal issues that we review de novo. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985).

The parties do not dispute the validity of the arbitration agreement. And "Minnesota public policy favors arbitration as an informal and inexpensive means of resolving disputes between parties whose contract includes an arbitration clause." *Johnson v. Piper Jaffray, Inc.*, 515 N.W.2d 752, 753 (Minn.App.1994), *aff'd*, 530 N.W.2d 790 (Minn.1995). The Minnesota Arbitration Act (MAA) codifies this policy: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Minn.Stat. § 572.08 (2002).

Thus, the issue before us is whether the MTSRA provides grounds under the MAA to preclude a district court from enforcing a valid arbitration agreement. In denying appellant's motion to compel arbitration, the district court relied on language in the MTSRA stating that a manufacturer's sole remedy is to submit a dispute to arbitration, and that "[a] sales representative may also submit a matter to arbitration, or in the alternative, at the sales representative's option prior to the arbitration hearing, the sales representative may bring the sales representative's claims in a court of law, and in that event the claims of all parties must be resolved in that forum." Minn.Stat. § 325E.37, subd. 5(a) (2002). The statute does not specifically address situations where there is a written agreement to arbitrate. Rather, it provides a process for resolving disputes absent an agreement to arbitrate. Because the MTSRA is silent on the parties' ability to enter into a binding arbitration agreement prior to an allegation of an MTSRA violation, we must look to relevant caselaw for guidance on this issue.

The supreme court has held that the remedial scheme in the Minnesota Human Rights Act (MHRA) precludes arbitration of an employee's human rights act claim. *Correll*, 607 N.W.2d at 444. In *Correll*, the supreme court found that the MHRA provided an exclusive remedial scheme for resolving and adjudicating pending claims. *Id.*; *see also* Minn.Stat. § 363A.04 (Supp. 2003) (providing that "as to acts declared unfair by sections 363A.08 to 363A.19, and 363A.28, subdivision 10, the procedure herein provided shall, while pending, be exclusive"); Minn.Stat. § 363A.31, subd. 1 (Supp. 2003) (prohibiting parties from agreeing to arbitrate). The supreme court also stated that, according to guidelines of statutory interpretation, the MHRA's exclusive remedial provision was a specific provision that was excepted from the more general provisions of the MAA. *Correll*, 607 N.W.2d at 446.

But we conclude that the holding in *Correll* is not controlling here. Importantly, the MTSRA, which is much less extensive than the MHRA, does not contain an exclusivity provision like the MHRA. And had the legislature intended the MTSRA to limit a sales representative's ability to waive his or her right to sue in court, it could have expressly stated so. It did not. Moreover, Minnesota courts have enforced parties' agreements to waive other provisions under the MTSRA. *See Hagstrom v. American Circuit Breaker Corp.*, 518 N.W.2d 46, 49 (Minn.App.1994), *review denied* (Minn. Aug. 24, 1994). And "[i]t is ... well established that, except as limited by public policy, a person may waive a statutory right." *Stephenson v. Martin*, 259 N.W.2d 467, 470 (Minn.1977). In *Hagstrom*, this court enforced a Minnesota sales-representative's agreement selecting another forum's law to govern disputes, even where that forum provided less protection than the MTSRA. 518 N.W.2d at 49. Thus, the court enforced the parties'

agreement to, in essence, opt out of the MTSRA. *Id.*

The *Hagstrom* court analogized the MTSRA to the Minnesota Franchise Act (MFA) based on the fact that the legislature amended the MFA to void contractual choice of law provisions a year before the enactment of the MTSRA. *Id.* at 48. Contrasting the legislature's treatment of the MFA and the MTSRA, the *Hagstrom* court determined that the legislature did not intend the MTSRA to restrict choice of law provisions, because, if the legislature cared to put a nonwaiver of statutory rights provision in the MTSRA, it could have done so. *Id.* at 49. The court therefore held that the contractual choice of law provision was enforceable absent a showing that North Carolina's law was selected in bad faith. *Id.*

We conclude that in light of the specific language in the MTSRA, the holdings in *Correll* and *Hagstrom,* and the legislature's strong preference for arbitration, the MTSRA does not preclude sales representatives from entering into binding arbitration agreements, thereby waiving their right to pursue their claims in a court of law.

## DECISION

The district court erred in determining that the Minnesota Termination of Sales Representatives Act provides a legal ground under the Minnesota Arbitration Act that precludes enforcement of an otherwise valid arbitration agreement.

**Reversed and remanded.**