**WARREN E. JOHNSON COMPANIES, d/b/a Johnson Commercial Agents, Plaintiff,**

v.

**UNIFIED BRAND, INC., f/k/a DI Foodservice Companies, Defendant.**

**Civ. No. 10–196 (MJD/RLE).**

United States District Court, D. Minnesota.

Aug. 4, 2010.

J. Mark Dady, John D. Holland, Dady & Gardner, PA, Minneapolis, MN, for Plaintiff.

Elizabeth C. Kramer, David R. Crosby, Leonard Street and Deinard, PA, Minneapolis, MN, for Defendant.

## ORDER

MICHAEL J. DAVIS, Chief Judge.

The above-entitled matter comes before the Court upon Plaintiff's objection to the Report and Recommendation of Chief United States Magistrate Judge Raymond L. Erickson dated June 8, 2010. Plaintiff objects to that portion of the Report and Recommendation that recommends that this Court dismiss claim 1 with prejudice and dismiss that portion of claim 2 that asserts a claim for breach of implied covenant of good faith and fair dealing by terminating the Agreement.

Pursuant to statute, the Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b). Based on that review the Court will adopt the Report and Recommendation dated June 8, 2010, with the exception of footnote 5. The deadline to file amended pleadings in this case has not yet been determined, and Plaintiff should have the opportunity to file a formal motion to amend the Complaint as to claim 1.

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Doc. No. 5] is GRANTED. Claim 1 is dismissed without prejudice and Claim 2, to the extent Plaintiff asserts a claim for breach of implied covenant of good faith and fair dealing by terminating the Agreement, is dismissed with prejudice.

## REPORT AND RECOMMENDATION

RAYMOND L. ERICKSON, United States Chief Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of the Defendant Unified Brand, Inc. ("Unified"), for Partial Dismissal of the Complaint. A Hearing on the Motions was conducted on April 28, 2010, at which time, the Plaintiff Warren E. Johnson Companies ("JCA") appeared by J. Mark Dady, and John D. Holland, Esqs., and Unified appeared by David R. Crosby, and Elizabeth C. Kramer, Esqs.[1] For reasons which follow, we recommend that Unified's Motion be granted.

### II. *Factual and Procedural Background*

JCA filed the Complaint on January 22, 2010, in Count I of which it alleges that Unified illegally terminated a Sales Representative Agreement, in violation of the Minnesota Termination of Sales Representative Act, Minnesota Statutes Section 325E.37 (MTSRA). See, *Complaint, Docket No. 1*, at pp. 7–9. In Count II, the Complaint also asserts a claim for a breach of an implied covenant of good faith and

---

**1.** At the Hearing, counsel for Unified advised that there were responses, by JCA, to Unified's Requests for Admissions, as well as its Interrogatories, which had a bearing on the issues before the Court, and we permitted Unified to submit those responses, by May 7, 2010. Unified submitted those responses on May 3, 2010, see, *Letter, Docket No. 20*, and we took the Motion under advisement as of that date.

fair dealing, which is both related to the termination of the Agreement, and to Unified's conduct just prior to the effective date of termination, with respect to a potential order from a Famous Daves' restaurant.[2] *Id.* at pp. 9–11. In its Answer, which was filed after the filing of Unified's Motion to Dismiss, Unified denies that it illegally terminated the Agreement, or terminated that Agreement in violation of an implied covenant of good faith and fair dealing. See, *Answer, Docket No. 9.*

On November 18, 2002, the parties entered into a service Agreement, which is attached to the Complaint. See, *Agreement, Docket No. 1–1, Exhibit A.* In that Agreement, JCA agreed to sell kitchen products that were manufactured by Unified, in exchange for commissions. *Id.* Pertinent to the issues, which are raised by the Motion, are three (3) terms of the contract: 1) that the Agreement could be terminated "with or without good cause" by either party, with thirty (30) days notice; 2) that the "Agreement will be construed in accord with the laws of Mississippi;" and, according to Unified, and not disputed by JCA, 3) that modifications to the Agreement must be in a signed writing. *Id.* at pp. 6 ¶ 9, 8 ¶ 13, and 7 ¶ 11. Unified terminated the Agreement, effective December 31, 2009, by letter dated November 16, 2009. See, *Letter, Complaint, Docket No. 1–2, Exhibit B.*

In its Motion for Partial Dismissal, Unified seeks to dismiss Count I, and that part of Count II which is related to the termination of the Agreement. See, *Memorandum in Support of Motion to Dismiss ("Memo in Support"), Docket No. 7,* at p. 1 of 7. In support of the Motion, Unified contends that the Agreement expressly provides that Mississippi law will govern,

and that, therefore, JCA has no cause of action under the MTSRA. *Id.* at pp. 3–5 of 7. Unified also seeks a dismissal of the relevant portion of Count II, and contends that JCA's claim for a breach of good faith and fair dealing cannot be sustained, because Unified assertedly abided by the express terms of the Agreement, in sending a letter notifying JCA of the termination, and by allowing more than thirty (30) days notice. *Id.* at pp. 5–7 of 7.

In its Response, JCA proffers a number of alternative arguments. See, *Memorandum in Opposition to Motion to Dismiss ("Memo in Opp."), Docket No. 14.* First, JCA argues that the choice of law provision—that the Agreement will be construed according to Mississippi law—is too narrow to abrogate the rights and obligations of both parties in their "relationship," under Minnesota statutory law—in particular, the MTSRA. *Id.* at pp. 8–13 of 24. JCA argues, in the alternative, that the choice of law provision is ambiguous, and should be construed against Unified, as the drafter of the Agreement, *id.* at pp. 13–15 of 24; that JCA did not voluntarily waive its rights under the MTSRA by signing the Agreement, *id.* at pp. 15–16 of 24; and that, even if Mississippi law applies, the Courts of Mississippi "honor[ ] the legislative enactments of other jurisdictions," when they are not contrary to Mississippi statutory law, such that the MTSRA claim would not necessarily be unavailable under Mississippi law. *Id.* at pp. 16–19 of 24. JCA does not argue that the application of Mississippi law would be unconstitutional under the circumstances here.

With respect to Count II, JCA argues that several years after the Agreement was signed, Unified began a "probation

---

**2.** Unified does not seek to dismiss Count II, at least as that Count is related to Unified's alleged conduct with respect to the Famous

Dave's order. See, *Unified's Memorandum in Support of Motion ("Memo in Support"), Docket No. 7,* at pp. 1–2 n. 2.

program," whereby underperforming sales representatives would be notified of their poor performance, and allowed an opportunity to cure, and that the program effectively modified the Agreement by conduct, such that Unified was required to place JCA in the program before terminating the Agreement. *Id.* at pp. 20–22 of 24.

In its Reply, Unified urges that the choice of law provision is no narrower than other provisions which have been enforced to preclude claims under the MTSRA. See, *Reply, Docket No. 15,* at pp. 2–5 of 9. Unified also argues that the choice of law issue is governed by Minnesota law, and not Mississippi law, and that the MTSRA is not available under Mississippi's substantive law. *Id.* at pp. 5–6 of 9. In addition, Unified maintains that the Agreement expressly provides that all modifications must be in a signed writing, and therefore, the creation of the probation program, as alleged, could not modify the terms of the Agreement. *Id.* at pp. 7–8 of 9.

### III. *Discussion*

A. *Standard of Review.* "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." *Riley v. St. Louis County,* 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999), citing *Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554, 556 (8th Cir.1998); see also, *Maki v. Allete, Inc.,* 383 F.3d 740, 742 (8th Cir.2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. See, *Maki v. Allete, Inc.,* supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." [3] *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001), citing *Breedlove v. Earthgrains Baking,* 140 F.3d 797, 799 (8th Cir.1998), cert. denied, 525 U.S. 921, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998); see also, *Maki v. Allete, Inc.,* supra at 742; *Helleloid v. Independent School Dist. No. 361,* 149 F.Supp.2d 863, 866–67 (D.Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles,* supra at 627, citing *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." *Id.,* citing *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998); see also, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

---

**3.** We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(The standard in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* Here, we apply the Supreme Court's "accepted pleading standard." See, *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); see also, *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 1951, 173 L.Ed.2d 868 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and cautioning that "[i]t is the conclusory nature of [the plaintiffs'] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

B. *Legal Analysis.* Since they involve different factual and legal considerations, we separately address Unified's effort to dismiss Count I and Count II.

■ 1. *Unified's Motion to Dismiss Count I.* As we have detailed, Count I of the Complaint raises a claim under the MTSRA, even though the Agreement at issue contains a choice of law provision, which selects the laws of Mississippi to govern the construction of the Agreement. Irrespective of that provision, "[a] federal court sitting in diversity must apply the choice of law principles of the state in which it sits." *Florida State Bd. of Admin. v. Engineering and Environmental Services, Inc.,* 262 F.Supp.2d 1004, 1010 (D.Minn.2003), citing *Fuller v. Hartford Life Ins. Co.,* 281 F.3d 704, 707 (8th Cir. 2002); see also, *Cotton v. Commodore Exp., Inc.,* 459 F.3d 862, 863–64 (8th Cir. 2006), citing *Heating & Air Specialists, Inc. v. Jones,* 180 F.3d 923, 928 (8th Cir. 1999). As a consequence, we apply the choice of law principles of the State of Minnesota.

"Minnesota traditionally enforces parties' contractual choice of law provisions [and] Minnesota courts have consistently expressed a commitment to the rule 'that the parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern.'" *Hagstrom v. American Circuit Breaker Corp.,* 518 N.W.2d 46, 48 (Minn.App.1994), review denied (August 24, 1994), quoting *Combined Ins. Co. of Am. v. Bode,* 247 Minn. 458, 77 N.W.2d 533, 536 (1956); see also, *Milliken and Co. v. Eagle Packaging Co., Inc.,* 295 N.W.2d 377, 380 n. 1 (Minn. 1980) ("This court is 'committed to the rule' that parties may agree that the law of another state shall govern their agreement and will interpret and apply the law of another state where such an agreement is made.")[internal citations omitted].

Here, JCA attached a copy of the Agreement to its Complaint, and Paragraph 13 of that Agreement expressly provides that the "Agreement will be construed in accord with the laws of Mississippi." *Agreement,* supra at p. 8 ¶ 13. In support of its Motion to Dismiss, Unified relies upon *Hagstrom v. American Circuit Breaker Corp.,* supra, and *Automated Telemarketing Services v. Aspect Software, Inc.,* 2009 WL 2461663 (D.Minn., August 10, 2009), in which the Courts determined that contractual choice of law provisions, that selected the laws of States other than Minnesota, precluded claims for a violation of the MTSRA. As noted, JCA contends that, here, the choice of law clause in the Agreement is narrowly drafted, and only applies to questions as to interpretation of the terms of the Agreement, and not as to the "relationship" between the parties. In support of that contention, JCA relies upon a number of cases, none of which involve the application of Minnesota's choice of law jurisprudence.

■ We find that, under Minnesota law, the claim that JCA asserts under the MTSRA falls within the purview of the choice of law provision in the Agreement. The Court of Appeals for the Eighth Circuit, applying Minnesota law, has held that

a narrowly-drafted contractual choice of law clause applies not only to contract claims, but also to any tort claims, which are "closely related" to the terms of the contract, such that the Court would need to interpret the contract in order to resolve the tort claim. See, *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1392 (8th Cir.1997). There, the Court held that a clause, which stated that the "Agreement shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of the State of Minnesota," applied to the plaintiff's claims for negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment, because those tort claims "raise[d] issues of performance and compensation for work done under the [ ] contracts[,]" and therefore, were "closely related to the interpretation of the contracts." *Id.*

Minnesota Courts have not addressed the holding in *Northwest*, but Courts in the District of Minnesota, and in the Eighth Circuit, have applied that holding a number of times. See, *Holden Farms,*

*Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1061 (8th Cir.2003) ("The essential principle of Northwest Airlines is that, under Minnesota law, if analysis of the claims connected to a contract involves interpretation of the contract, then the forum will apply the contractual choice-of-law provisions to the tort claims."); *Evangelical Lutheran Church in America Bd. of Pensions v. Spherion*, 2005 WL 1041487 at *1 (D.Minn., May 4, 2005) ("In applying Minnesota law, the Eighth Circuit has held that even narrowly drawn choice of law provisions will apply to noncontract claims if the non-contract claims 'are closely related to the interpretation of the contract[ ] and fall within the ambit of the express agreement.'"), quoting *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, supra at 1392; *Florida State Bd. of Administration v. Law Engineering and Environmental Services, Inc.*, supra at 1012–13; *Andrews v. Temple Inland Mortgage Corp.*, 2001 WL 1136160 at *5 (D.Minn., September 24, 2001).[4]

In addition, the holding in *Northwest* is consistent with the Minnesota Courts' ap-

---

**4.** In *Florida State Board of Administration v. Law Engineering and Environmental Services, Inc.*, 262 F.Supp.2d 1004, 1012–13 (D.Minn. 2003), the Court distinguished six (6) of the eight (8) cases upon which JCA relies, for its argument that the choice of law clause should be narrowly applied. In particular, the Court distinguished *Inacom Corp. v. Sears, Roebuck, and Co.*, 254 F.3d 683, 687 (8th Cir.2001), because there, the Eighth Circuit Court of Appeals applied Nebraska law; the tort claims were related to the contract's formation, rather than its performance; and the choice of law provision was even narrower, as it specified that Illinois law would apply "as applied to contracts." *Florida State Board of Administration v. Law Engineering and Environmental Services, Inc.*, supra at 1014–15. Here, JCA relies most heavily upon *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923 (8th Cir.1999). There, the Court applied Arkansas's choice of law jurisprudence, and also cited a Texas case, for its narrow application

of the choice of law clause. *Id.* at 930. As a consequence, *Jones* does not control our decision, which must be founded on the law of Minnesota.

Of course, given the choice of law provision in the Agreement, the question remains as to whether, in determining the scope of that choice of law clause, we are required to apply Mississippi law—an issue that the Courts in our District have answered in the negative. In *Florida State Board*, the Court held that, "[i]n determining whether a choice of law provision in the parties' agreement will be given effect, a federal court sitting in diversity looks to the choice of law principles of the forum state[.]". *Florida State Bd. of Administration v. Law Engineering and Environmental Services, Inc.*, supra at 1012. Accordingly, we apply Minnesota law in deciding the scope of a choice of law clause, inclusive of the cases in our Circuit, and District, which apply Minnesota law.

proach to the interpretation of anti-assignment clauses, which steers away from looking for, or requiring, "magic words," but rather, reads contract terms for "plain meaning" without "impos[ing] formulaic restraints on the language that contracting parties may employ." See, *Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267, 272, 273 (Minn.2004). Accordingly, applying *Northwest's* "closely related" analysis, we find that the claim pertaining to the MTSRA, that Unified unjustifiably terminated the contract without good cause, is closely related to the terms of the contract.

In particular, the presence or absence of "good cause" for Unified's termination of the Agreement is necessarily predicated upon our determination of what JCA's obligations were, under the Agreement, and whether JCA adequately met those obligations. To decide that issue, the Court plainly needs to interpret the terms of the Agreement, that are related to JCA's required performance. As a consequence, the claim for wrongful termination, under the provisions of the MTSRA, is closely related to the contract's terms, and falls well within the purview of the choice of law clause. See, *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* supra at 1392; *Florida State Board of Administration v. Law Engineering and Environmental Services, Inc.,* supra at 1013–14 (finding claims of negligence, breach of fiduciary duty, and negligent misrepresentation, were closely related to the contract, because they were based upon promises made in, and duties under, that contract); *Holden Farms, Inc. v. Hog Slat, Inc.,* supra at 1061 (finding negligent design and negligent misrepresentation claims closely related to the contracts since, whether the negligent misrepresentation occurred, required an "analysis of whether the con-

tract included" the stated warranties, and what those warranties meant.); *Evangelical Lutheran Church in America Bd. of Pensions v. Spherion,* supra at *1–2 (concluding that claims of fraud and fraudulent inducement were closely related to the interpretation of the contract, because they were predicated upon an agreement being made, and the Court would need to interpret that agreement).

Our conclusion, that the choice of law clause applies to the tort claim under the MTSRA, is consistent with the Minnesota Court of Appeal's holding, in *Hagstrom v. American Circuit Breaker Corp.,* supra at 48–49, that the MTSRA claim, which was asserted there, could not survive because of a valid contractual choice of law provision selecting North Carolina law—although the Court did not address the scope of the clause directly—and is also consistent with *Automated Telemarketing Services v. Aspect Software, Inc.,* supra at *1, where the Court dismissed the MTSRA claim due to the parties' election to apply Georgia law, although, once again, the Court did not discuss the scope of that clause.

Further, the Complaint—and JCA's Response to the Motion—fails to include any allegation, or argument, that the choice of law clause is invalid for any reason and, notably, JCA has made no assertion of bad faith, on the part of Unified, or that Unified attempted to evade Minnesota law with respect to the selection of Mississippi law. See, *Hagstrom v. American Circuit Breaker Corp.,* supra at 48 ("Minnesota courts have consistently expressed a commitment to the rule 'that the parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern.' ")[internal citations omitted].[5]

---

**5.** At the Hearing, JCA requested leave to     amend the Complaint, in order to allege that

JCA attempts to distinguish *Hagstrom v. American Circuit Breaker Corp.*, supra, because, it contends, the language of the choice of law clause was broader in *Hagstrom*, since it provided that the "validity, construction and performance" of the Agreement would be "governed by" the laws of North Carolina.[6] See, *Hagstrom v. American Circuit Breaker Corp.*, supra at 47. However, we are unpersuaded by that attempt to distinguish *Hagstrom*, for, to the extent that the clause in *Hagstrom* is broader, it does not purport to apply to more than "[t]his Agreement," and so, the clause is no more specifically related to tort actions, than is the clause at issue here.

Further, in *Northwest*, the choice of law clause stated that the "Agreement shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of the State of Minnesota * * *", and there, the Court determined that claims related to negligent performance fell "within the ambit" of that clause. *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, supra at 1389. Additionally, neither of the clauses in *Hagstrom*, or *Northwest*, provided that the choice of law clause applied to the "rela-

---

Unified sought to evade Minnesota law, by use of the choice of law clause that selected Mississippi law. However, according to JCA's Responses to Unified's Requests for Admissions, and its Answers to Unified's Interrogatories, which were submitted to the Court after the Hearing on the Motion, JCA admits that Unified did not express an intent to evade Minnesota law by the choice of law clause, that JCA did not attempt to negotiate the choice of law provision of the Agreement, and that, as is alleged in the Complaint, Unified is a Delaware corporation, with its corporate headquarters and manufacturing facilities located in Mississippi, while JCA's sales region included Minnesota, North Dakota, and South Dakota. See, *Plaintiff's Responses to Defendant's First Set of Requests for Admission, Docket No. 20–1*, Admission No. 7, at pp. 4–5 of 5; *Plaintiff's Responses to Defendant's First Set of Document Requests and Interrogatories, Docket No. 20–2*, Interrogatory No. 10 at p. 8 of 12; *Complaint, Docket No. 1*, at p. 2 of 11; *Agreement, Docket No. 1–1, Exhibit A*, at p. 9 of 12.

As a consequence, we find that the requested leave to amend the Complaint, so as to allege that the choice of law clause was an act of bad faith, would be futile, as JCA has presented the Court with nothing, other than its conclusory assertion, which could support an assertion that Unified acted to evade Minnesota law, or in bad faith. See, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)(a Court may, within its discretion, deny a Motion to Amend where, inter alia, the amendment would be futile); see also, e.g., *Guidant Sales Corp. v. Niebur*,

2001 WL 1636502 at *5 (D.Minn., October 18, 2001)(upholding choice of law provision, where employee was not a resident of the state, but the employer was, and the employee worked for the employer for 10 years); *Premier Indus. Corp. v. Jensen*, 1990 WL 264485 at *2 (D.Minn., December 27, 1990)(finding no intent to evade Minnesota law where the plaintiff was an "Ohio corporation which does business and deploys sales agents nationwide," and the employee began working in Ohio); *Automated Telemarketing Services, Inc. v. Aspect Software, Inc.*, 2009 WL 2461663 at *1 (D.Minn., August 10, 2009).

Notably, JCA did not respond to Unified's submission of JCA's discovery responses, so as to so much as suggest that newly discovered information would alter or amend those discovery responses.

6. In its Reply, Unified also attempts to distinguish *Heating & Air Specialists, Inc. v. Jones*, supra, by arguing that "interpretation" is more narrow than "construction." See, *Reply, Docket No. 15*, at p. 5–6 of 9. Given that Black's Law Dictionary defines "construction," in relevant part, as "[t]he act or process of interpreting or explaining the sense or intention of a writing * * * [or] the ascertainment of a document's meaning * * *," see, *Black's Law Dictionary* 355 (9th Ed.2009), and defines "interpretation" as "[t]he process of determining what something * * * means," *id.* at 894, the distinction espoused by Unified is unavailing, and unnecessary, as the Court did not apply Minnesota law in *Heating & Air Specialists v. Jones*, supra.

tionship" between the parties, as JCA urges should have been the language employed in the clause here. As a consequence, Mississippi law governs Count I, and we recommend that the claim raised in Count I, under the MTSRA, be dismissed. See, *Hagstrom v. American Circuit Breaker Corporation*, supra at 48–49; *Automated Telemarketing Services v. Aspect Software*, supra; *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, supra at 1392 n. 4.[7]

In the alternative, however, JCA argues that the choice of law clause is ambiguous, since, according to JCA, it can reasonably be interpreted to either exclude, or include, the tort claim at issue here, and therefore, in accordance with the principles of contract construction, that ambiguity should be resolved in JCA's favor, in order to exclude all tort actions from choice of law clause, and so as to permit JCA's claim under the MTSRA. However, JCA has not cited to any case in which the Court found a choice of law clause to be ambiguous, and notably, none of the cases cited by either party, or discovered during our independent research, analyze whether such a clause could be ambiguous, with the exception of *Heating & Air Specialists, Inc. v. Jones*, supra at 930, which mentions the possibility of an ambiguity only in passing.

By way of comparison, in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514

U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the Supreme Court found that a choice of law provision, which elected New York law, created an ambiguity in the contract, where it conflicted with another provision which provided that rules of arbitration, which were less restrictive than the New York law, would apply to arbitration. See also, *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 801 (8th Cir.2004)(conflict found between an arbitration rules provision, and a choice of law provision, and finding latent ambiguity where "the clause attempts to effect a prospective waiver of rights which Missouri law holds may not be waived."), cert. denied, 544 U.S. 1000, 125 S.Ct. 1943, 161 L.Ed.2d 774 (2005); *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1060 (8th Cir.1995)(applying Ohio law, and finding the term "order," in a contract term, to be reasonably susceptible of two (2) differing interpretations, as the remainder of the contract referred to "orders," "purchase orders," and "business booked," but did not define any of those terms). There is no such inconsistency in the Agreement at issue here, nor does the choice of law clause contradict a prohibition on the waiver of a claim under the MTSRA, and therefore, we find that the choice of law clause is legally unambiguous. See, *Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 946 (8th Cir.2009) (a contract term is not ambiguous simply because the parties dis-

---

**7.** In *Fredin v. Sharp*, 176 F.R.D. 304, 309 (D.Minn.1997), in deciding a Motion to Amend an Answer, we noted that it was not clear "whether the Plaintiff's Minnesota statutory claims survive[d] the parties' designation of South Dakota law." This question appears to have been answered by the Eighth Circuit. See, *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1392 n. 4 (8th Cir.1997)("The district court did not err in applying Minnesota law [pursuant to the clause] to dismiss the claims for violation of

the Texas Deceptive Trade Practices Act * * * or unjust enrichment[,]" because "the deceptive trade practices claim rests on a Texas statute not available under Minnesota law."); see also, *Lyon Financial Services, Inc. v. Young Vending Services*, 2003 WL 22177597 at *5 (Minn.App., September 23, 2003)(affirming dismissal of a claim under the Texas Deceptive Trade Practices Act, because choice of law clause provided that the lease would be "governed by and construed in accordance with the laws of the State of Minnesota.").

agree as to its meaning).[8]

Moreover, the issue of ambiguity strikes us as being beside the point. The language of the choice of law provision is clear, and undisputed: the clause applies to "the Agreement." However, the question we address, under the *Northwest* analysis, is whether the claim that JCA seeks to prosecute against Unified, for improper termination of the Agreement in the alleged absence of "good cause," under the MTSRA, is so closely related to the terms of "the Agreement," that the claim falls within the ambit of the choice of law clause—a question that we have answered in the affirmative.

JCA further argues, in the alternative, that the choice of law clause should not be applied to bar its claim under the MTSRA, because JCA did not voluntarily waive its rights under that statute, by entering into the Agreement. The argument is based upon JCA's assertion that it did not understand the clause to apply to anything beyond the strict construction of the contract's terms, and any claims that might be raised in contract law. Given the circumstances, here, our analysis of whether a party can effectively waive its rights, under the MTSRA, by electing to apply another State's laws to a sales representative agreement, is governed by the Minnesota Court of Appeals' decision in *Hagstrom v. American Circuit Breaker Corporation,* supra.

In *Hagstrom,* the Court reasoned that, because there is no provision in the MTSRA, that renders void those choice of law clauses which exclude actions under the MTSRA, parties can waive the rights afforded by the MTSRA, by agreeing to a choice of law clause which elects another State's laws. See *Hagstrom v. American Circuit Breaker Corporation,* supra at 48–49; see also, *A.J. Lights, LLC v. Synergy Design Group, Inc.,* 690 N.W.2d 567, 569–70 (Minn.App.2005)(reading *Hagstrom* as holding that parties may agree to "waive [ ] provisions under the MTSRA," and that, a choice of law clause worked "in essence, [to] opt out of the MTSRA."). Indeed, the Minnesota Legislature has proscribed such waivers, but only for dealers of plumbing supplies, leading to the inevitable conclusion that, when the Legislature wishes to prohibit a waiver of the MTSRA, through choice of law clauses, it does so. See, *Minnesota Statutes Section 325E.37, Subdivision 6(c)* ("A provision in any contract between a sales representative dealing in plumbing equipment or supplies and a principal purporting to waive any provision of Laws 2007, chapters 135 or 140, whether by express waiver or by a provision stipulating that the contract is subject to the laws of another state, shall be void."). Accordingly, we reject JCA's argument, that it did not waive its rights under the MTSRA, by agreeing to the application of Mississippi law.

In its final alternative argument, as to Count I, JCA urges us to find that, even if Mississippi law applies to the relationship between the parties, Mississippi's choice of law jurisprudence would allow the claim under the MTSRA to proceed. JCA does

---

8. We are not persuaded by JCA's argument, that the scope of the choice of law clause is a question of fact, which cannot be determined on a Motion to Dismiss, because the Court is obligated to interpret an unambiguous contract. See, *Porous Media Corp. v. Midland Brake, Inc.,* 220 F.3d 954, 959 (8th Cir. 2000)("The meaning of an unambiguous contract is a matter of law for the court * * *; however, the meaning of an ambiguous contract term is a fact question for the jury.")[internal citations omitted]; *Murray v. Puls,* 690 N.W.2d 337, 343 (Minn.App.2004), quoting *City of Virginia v. Northland Office Properties Ltd. Partnership,* 465 N.W.2d 424, 427 (Minn. App.1991). As we have explained, we find no ambiguity here.

not cite any authority for the proposition, that we should apply Mississippi choice of law rules, but simply argues that it is "logical" to do so, if we apply the choice of law clause that elects Mississippi law. However, we find little logic in circularly applying the Minnesota choice of law rules, so as to find that Mississippi substantive law, and its choice of law rules, apply, in order to ultimately conclude that Minnesota's substantive law applies, inclusive of a claim under MTSRA claim, when the whole circuitous exercise flies in the face of the governing rule that "[a] federal court sitting in diversity **must apply** the choice of law principles of the state in which it sits." *Florida State Board of Administration v. Law Engineering and Environmental Services, Inc.*, supra at 1011 [emphasis added].

■ Even if we were to apply Mississippi's choice of law jurisprudence, as JCA urges us to do, the case that JCA relies upon, in order to support its argument that Mississippi Courts would permit the MTSRA claim to proceed, does not involve a contractual choice of law clause. See, *Boardman v. United Services Automobile Association*, 470 So.2d 1024 (Miss.1985). In fact, in Mississippi, "[t]he general rule is that courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern." *Cox v. Howard, Weil Labouisse, Friedrichs, Inc.*, 619 So.2d 908, 911 (Miss.1993). While Mississippi, like Minnesota, will not apply a foreign State's substantive laws, when they conflict with Mississippi's fundamental public policy, see, e.g., *Dale v. Ala Acquisitions I, Inc.*, 434 F.Supp.2d 423, 433–34 (S.D.Miss. 2006); *Boardman v. United Services Auto-*

*mobile Association*, supra at 1038, that does not support JCA's argument—that Mississippi would allow a cause of action under the MTSRA—notwithstanding the choice of law clause, because the choice of law provision does not conflict with Mississippi policy.

Under Minnesota law, JCA and Unified contracted to apply Mississippi law to the Agreement, and the claim, which JCA attempts to raise under the MTSRA, is so related to the Agreement that the choice of Mississippi law applies to that claim as well, and precludes JCA's attempt to invoke the protections of the MTSRA. As a consequence, we recommend that the Motion to Dismiss be granted as to Count I of the Complaint.

2. *Unified's Motion to Dismiss a Portion of Count II.* Unified also moves the Court to dismiss that portion of Count II which raises a claim for a breach of the implied covenant of good faith and fair dealing, as it relates to Unified's termination of the Agreement. Unified contends that, under Mississippi law, a party cannot act in bad faith when its actions are undertaken according to its rights under a contract. JCA does not dispute this characterization of Mississippi law, but rather, JCA argues that the Agreement was modified by Unified's creation of a "probation program," and that the failure to conform to that program breached the implied covenant. We find the argument unpersuasive under the circumstances presented here.

■ The Agreement contains a clause which provides that all modifications to the Agreement must be in writing.[9] In Mis-

---

9. The integration clause of the Agreement provides that Unified "may, in its sole discretion and by thirty (30) days prior notice, make such changes pursuant to authority which it has reserved herein, including, without limita-

tion, changing the description of the Sales Representative Territory in Section 2 above, and changing the commission percentages referred to in Section 5 above * * * [and] [e]xcept for the foregoing amendments by [Uni-

sissippi, a no-oral-modification clause can be orally waived where both parties agree to do so, see, *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582, 584 (Miss.1988); *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So.2d 938, 946 (Miss.1992)("A written contract, however, even one that explicitly requires written modification, may subsequently be orally modified."), or waive the no-oral-modification clause through "a persistent pattern of conduct." See, *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So.2d 495, 507 (Miss.2007). However, "[f]or a subsequent agreement to modify an existing contract, the later agreement must, itself, meet the requirements for a valid contract * * * [and] [s]ince a contract modification must have the same essentials as a contract, a binding post-contract agreement must fulfill the requirements of a contract regardless of whether a party characterizes it as a modification or a stand-alone contract." *Singing River Mall Co. v. Mark Fields, Inc.*, supra at 947 [internal citations omitted]; see also, *Anderton v. Business Aircraft, Inc.* 650 So.2d 473, 476 (Miss.1995); *Heritage Bldg. Property, LLC v. Prime Income Asset Management, Inc.*, 43 So.3d 1138, 1142–43 (Miss.App. 2009).

We recognize that, under Mississippi law, "[t]he question of whether or not the parties waived the requirement of writing [for a modification] is a jury question," *Singing River Mall Co. v. Mark Fields, Inc.*, supra at 946, and a merger clause "function[s] only to extinguish prior or contemporaneous modifications to the formation" of the contract, *id.* at 947. Here, however, although JCA argues, in conclusory terms, that "the parties modified their agreement to require that Unified Brands place JCA on probation and give JCA an opportunity to cure any alleged deficiencies in its performance prior to Unified Brands exercising its purported contractual right to terminate," see, *JCA's Memorandum in Opposition, Docket No. 14*, at p. 21 of 24, the Complaint contains no such allegation, no allegation that the written modification requirement was waived, and no assertion that the probation program modified the Agreement. Moreover, JCA attached the Agreement to the Complaint as written, with no addendums, no attached papers related to the probation program and, in fact, no allegation that the terms of the Agreement had been modified or altered at all. See, *Complaint*, supra at p. 4 of 11 ("A **true and correct** copy of the Sales Representative Agreement is attached hereto * * *.")[emphasis added], and Exhibit A.[10] Indeed, the

---

fied], this Agreement may only be amended or modified by a writing signed by the party against whom enforcement of the claimed amendment or modification is sought." See, *Agreement*, supra at p. 7 of 12. Neither party has made any arguments relating to the meaning of the former portion of the clause but, in any case, we find that it does not change our analysis, as the Complaint fails to allege that the Agreement was, in fact, modified, either unilaterally or bilaterally.

**10.** The Mississippi cases, which JCA cites to support its argument that the Agreement was modified by conduct, by way of Unified's creation of the probation program, are inapposite, since none of them involve contracts that

contained no-oral-modification clauses. See, *Anderton v. Business Aircraft, Inc.* 650 So.2d 473 (Miss.1995)(no mention of a no-oral-modification clause); *Harris v. Tom Griffith Water Well & Conductor Service, Inc.*, 26 So.3d 338 (Miss.2010)(oral employment contract); *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So.2d 1355, 1359 (Miss.1989)(where third party had relied upon a contract, resorting to parol evidence of the course of conduct where the contract was ambiguous, with no mention of a no-oral-modification clause); *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So.2d 938, 946 (Miss.1992)("This lease did not contain a clause barring future oral modifications * * *.").

first mention of any modification to the Agreement, that JCA made, was in its Memorandum in Opposition to the Motion for Partial Dismissal.

Instead, the Complaint simply alleges that Unified created the probation program, and did not place JCA on the program before terminating the Agreement. While JCA argues that we are required to infer that Unified put at least one of its sales representatives on the probation program—an "inference" we are not reasonably required to make—JCA has failed to explain, through case law or otherwise, why Unified's conduct, with respect to a third party, would alter the written terms of the Agreement, which Unified and JCA reached. As a consequence, since JCA has failed to allege that the Agreement was modified, and has failed to allege the elements of contract formation relating to a purported modification, under Mississippi law, see, *Singing River Mall Co. v. Mark Fields, Inc.*, supra at 947; *Heritage Bldg. Property, LLC v. Prime Income Asset Management, Inc.*, supra at 1142–43; see also, e.g., *Hunt v. Coker*, 741 So.2d 1011, 1015 (Miss.App.1999)(stating the elements of contract formation); *Favre Property Management, LLC v. Cinque Bambini*, 863 So.2d 1037, 1044 (Miss.App.2004)(for purposes of a Rule 12(b)(6) Motion to Dismiss, "[t]he elements of a breach of contract are: (1) the existence of a valid and binding contract * * *."), we find that the Agreement must be read as it is written, for purposes of Unified's Motion to Partially Dismiss.

■ As we have noted, the Agreement provides that either party can terminate it with or without good cause, with 30 days notice. The termination letter, which is also attached to the Complaint, is dated November 16, 2009, and notified JCA that the effective date of termination would be December 31, 2009, more than 30 days later, thereby complying with the terms of the Agreement. Accordingly, based upon the allegations of the Complaint, the terms of the Agreement and the termination letter, and Mississippi law, we find that JCA has failed to state a cognizable claim that Unified breached an implied covenant of good faith and fair dealing with respect to the termination of the Agreement. See, *Limbert v. Mississippi Univ. for Women Alumnae Ass'n, Inc.*, 998 So.2d 993, 999 (Miss.2008)(finding that the plaintiff had not acted in bad faith, because she had followed the terms of the contract in terminating the association with 60 days notice, and holding that the District Court had erred when it "essentially rewrote the agreement, excluding the termination clause."); see also, *Rosemont Gardens Funeral Chapel–Cemetery, Inc. v. Trustmark Nat. Bank*, 330 F.Supp.2d 801, 807 and 809–810 (S.D.Miss.2004)("Plaintiffs have no cognizable claim that Trustmark breached any duty of good faith and fair dealing, based upon its alleged 'performance' of the alleged 'agreement' to restructure Rosemont's loan, so as to reduce Rosemont's monthly payments, for to establish such a claim, plaintiffs would first have to prove the existence of a binding contract which obligated Trustmark to reduce the payments" and, " '[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms.' ")[internal quotation omitted].

Alternatively, JCA argues that, in developing the probation program, Unified altered the parties' "reasonable expectations" under the contract and, by failing to abide by those expectations, Unified breached its duty of good faith and fair dealing, but we find no merit in the argument. JCA cites to Mississippi case law, which holds that good faith is defined as

"the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Memo in Opp.*, supra at p. 22, quoting *Limbert v. Mississippi Univ. for Women Alumnae Ass'n, Inc.*, supra at 998, quoting, in turn, *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss.1992). While the quotation is accurate, in *Limbert*, the Mississippi Supreme Court ultimately found that the plaintiff had not acted in bad faith, because she had followed the terms of the contract in terminating the association with 60 days notice, and the Mississippi Supreme Court held that the District Court had erred when it "essentially rewrote the agreement, excluding the termination clause." *Id.* at 999. Further, the Court, in *Limbert*, explicitly began its interpretation of the terms of the contract within its "four corners," noting that the Court's "concern is not nearly .so much with what the parties may have intended, but with what they said, since the words employed are by far the best resources for ascertaining the intent and assigning meaning with fairness and accuracy," *id.* [internal quotations omitted], which would appear to foreclose JCA's implicit argument, that the "reasonable expectations" of the parties can be ascertained by parol evidence, absent some ambiguity in the terms of their Agreement.[11]

Accordingly, finding that Count I, and the portion of Count II that is related to

Unified's termination of the Agreement, fail as a matter of law, we recommend that Unified's Motion to Dismiss those claims be granted.

NOW, THEREFORE, It is—

RECOMMENDED:

That the Defendant's Motion for Partial Dismissal of the Complaint [Docket No. 5] be granted.

---

11. We also find that the Court's opinion, in *Cenac v. Murry*, 609 So.2d 1257 (Miss.1992), offers little to support JCA's argument, that Unified's creation of the probation program reasonably altered JCA's expectations concerning the termination term, thereby informing the "good faith" inquiry. In *Cenac*, the Court determined that the defendants, who were the sellers in a contract for deed for a country general store, had breached the covenant of good faith and fair dealing by engaging in a course of conduct that was designed to force the purchaser to forfeit her rights

under the contract for deed—and more than $30,000 in payments—by disconnecting the joint septic tank; wandering shirtless in the front yard "making ape-like motions;" videotaping the purchaser, her family, and customers; threatening the purchaser; and firing a pistol at the purchaser's car, as she drove down the road, among other things. *Id.* at 1261–63. There is nothing alleged here that is comparable to a *Cenac*-style pattern of attempts to frustrate the end result of an extant contract.