# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1671
_____

Engineered Sales, Co., a Minnesota corporation

*Plaintiff - Appellant*

v.

Endress + Hauser, Inc., an Indiana corporation; Miller Mechanical Specialties,
Inc., an Iowa corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 14, 2020
Filed: November 17, 2020

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Engineered Sales Company (Engineered Sales) sued Defendant
Endress + Hauser (E+H), asserting a violation of the Minnesota Termination of Sales
Representatives Act (the Act), Minn. Stat. § 325E.37. The parties dispute whether

the Act, as amended in 2014, applies to their contractual relationship. Finding that the Act applies, we reverse.

I.

Enacted in 1990, the Act restricts a manufacturer from terminating a sales representative agreement unless it has good cause, provides written notice of the reasons for the termination 90 days in advance, and allows the sales representative 60 days to correct the reasons that were given to justify the termination. Minn. Stat. § 325E.37, subd. 2. The Act's protections apply to independent sales representatives who reside in Minnesota, have their primary place of business in Minnesota, or are responsible for a territory that includes all or part of Minnesota. Id. § 325E.37, subd. 6. Upon the termination of a sales representative agreement, the Act requires the payment of outstanding commissions. Id. § 325E.37, subd. 4.

As originally drafted, parties to sales representative agreements could avoid the Act's requirements through choice-of-law provisions. However, in 2014, the Minnesota legislature amended the statute to add Subdivision 7, an anti-waiver provision. The anti-waiver provision states that a manufacturer may not "circumvent compliance" by including "an application or choice of law of any other state" or "a waiver of any provision" of the Act. Id. § 325E.37, subd. 7. Choice-of-law provisions found to violate Subdivision 7 are void and unenforceable. Id. Subdivision 7 became effective on August 1, 2014, as to "sales representative agreements entered into, renewed or amended on or after that date." 2014 Minn. Laws ch. 165, § 1.[1]

_____

[1]The date effective provision does not appear in the codification of the Act at Minn. Stat. § 325E.37. Accordingly, we cite the session law.

## II.

Engineered Sales is a Minnesota corporation with its principal place of business in Minnesota. E+H is an Indiana corporation with its principal place of business in Indiana. E+H manufactures industrial instrumentation and products. It uses an independent sales force to distribute its products throughout the country. In 2001, the parties entered into an Exclusive Representative Agreement (the Agreement) of indefinite duration. Under the Agreement, Engineered Sales would represent E+H as an independent sales representative and sell certain E+H products in the upper Midwest, including Minnesota. The Agreement contained an Indiana choice-of-law provision.

In 2013, E+H started the process of consolidating its sales representatives. Engineered Sales generally supported consolidation. To this end, Engineered Sales began to discuss the possibility of a merger with Miller Mechanical Specialties, Inc. (Miller), an E+H sales representative based in Iowa. E+H was directly involved in the discussions between Engineered Sales and Miller. Due to the substance of those conversations, E+H signed a non-disclosure agreement. After lengthy negotiations, on June 5, 2015, Miller offered to purchase Engineered Sales for $1.1 million. Engineered Sales declined the offer and instead proposed a purchase price of $1.62 million. Interested in seeing the deal close, E+H told Engineered Sales that it would terminate the Agreement if Engineered Sales did not accept Miller's offer. Engineered Sales did not accept the offer. On June 16, 2015, E+H terminated the Agreement with Engineered Sales and appointed Miller as its sales representative in Engineered Sales's former territory.

Engineered Sales brought suit against E+H and Miller,[2] alleging breach of contract, tortious interference, violation of the Act, and failure to pay commissions

---

[2] Defendant Miller, an Iowa corporation with its principal place of business in Iowa, is not a party to this appeal.

as required under Minn. Stat. § 181.145, and § 325E.37, subd. 4.  All parties moved for summary judgment.  Relevant to this appeal, Engineered Sales argued E+H violated the Act by terminating the Agreement without good cause and with a mere 30 days' notice.  In support of summary judgment, E+H argued the claim brought under the Act failed because the parties' relationship was governed by Indiana law pursuant to the choice-of-law provision within the Agreement.  In response, Engineered Sales argued the Act's anti-waiver provision, as added in 2014, made the parties' choice-of-law provision void and unenforceable.

The district court agreed with E+H, finding that the 2014 amendment to the Act did not apply to the Agreement because the Agreement was not "renewed" on or after August 1, 2014.  Engineered Sales now appeals the district court's ruling as to its claim under Minn. Stat. § 325E.37, and a subsidiary claim under Minn. Stat. § 181.145.

## III.

"We review a district court's grant of summary judgment de novo, including its interpretation of state law." Great W. Cas. Co. v. Decker, 957 F.3d 910, 913 (8th Cir. 2020) (quoting Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 875 (8th Cir. 2011)).  Because we are interpreting Minnesota law, we are "bound by the decisions of the Minnesota Supreme Court," and "[i]f the Minnesota Supreme Court has not spoken on a particular issue, we must attempt to predict how the Minnesota Supreme Court would decide [it] and 'may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data.'" Integrity Floorcovering, Inc. v. Broan-Nutone, LLC, 521 F.3d 914, 917 (8th Cir. 2008) (third alteration in original) (quoting Kovarik v. Am. Family Ins. Grp., 108 F.3d 962, 964 (8th Cir. 1997)).

On appeal, the parties dispute the meaning of "renewed" in the Act's 2014 amendment. Engineered Sales argues "renewed" was already defined in the 1991 amendment. Applying the same definition, Engineered Sales argues that, because it "solicited orders with E+H's consent and acquiescence after August 1, 2014," the Agreement was "renewed" after August 1, 2014, and the Act applies to make the Indiana choice-of-law provision void. E+H argues that to the extent the Act previously defined "renewed," the definition's application is limited to the 1991 amendment. For the following reasons, we agree with Engineered Sales.

As originally drafted, the Act stated that it applied to "any sales representative agreements entered into or renewed on or after" August 1, 1990. 1990 Minn. Laws ch. 539, § 5. It did not provide a definition for the term "renewed." In 1991, the Act was amended, with the stated purpose of "clarifying certain provisions." 1991 Minn. Laws ch. 190 (preamble). The 1991 amendatory law stated that it applied to "a sales representative agreement entered into or renewed on or after the effective date of this act." Id. § 2(a). It also provided a definition of "renewed" for agreements of both definite and indefinite duration. Id. Relevant here, it stated that a sales representative agreement of indefinite duration was "renewed" if, "with the principal's consent or acquiescence, the sales representative solicits orders on or after the effective date of" the amendatory law. Id. § 2(a)(2).

The Minnesota Supreme Court has not yet had an opportunity to rule on the Act's definition of "renewed." However, the Minnesota Court of Appeals held in New Creative Enterprises, Inc. v. Dick Hume & Associates, Inc., 494 N.W.2d 508, 511 (Minn. Ct. App. 1993), that a sales agreement entered into in 1986 and terminated in 1991 was subject to the Act as amended in 1991. In doing so, the court stated that the 1991 definition of "renewed" was a clarification of the meaning of the term in the Act as originally enacted in 1990.[3] Id.

---

[3]Viewing the amendatory language as a "clarification," the Court of Appeals explained that the 1991 amendment was able to be "read into [the] statutory law[] retroactively." New Creative Enters., 494 N.W.2d at 511. Retroactive application

Minnesota clarified the meaning of "renewed" in 1991.  Therefore, the term's meaning was already clear for purposes of the 2014 amendment.  When a statute defines a term, we understand that "[t]he legislature . . . intends in some measure to depart from the ordinary sense of that term."  U.S. Jaycees v. McClure, 305 N.W.2d 764, 766 (Minn. 1981).  In fact, "there is a presumption that we are not to substitute the literal, ordinary meaning of [the term] for the definition the legislature has provided."  Id.  As provided in the 1991 amendment, the definition of "renewed" clarified the meaning of the term as it is to be understood in the Act.  In two separate portions ("Renewal of Agreements" and "Application") of the 1991 amendment, the legislature acknowledged that sales agreements may be of "definite duration" or "indefinite duration."  Having indicated as such, the 1991 amendment clarified the definition of "renewed" for both types of agreements.  New Creative Enters., 494 N.W.2d at 511.

The 2014 amendment provides no indication that the term "renewed" should be defined any differently.  However, E+H argues that to the extent the Act already defines "renewed," the definition's application is limited to the 1991 amendment. E+H argues that because the statute does not define "renewed" again in the 2014 amendment, the court must now give the term a dictionary-provided definition such as "the act of restoring or reestablishing" or "to make like new."  E+H does not explain what this definition of the term would mean in practical application.  See New Creative Enters., 494 N.W.2d at 510 (stating that the "dictionary definition" provided to the court "did not furnish[] a clear outline of the meaning of 'renewed'" in the 1991 amendment).  Instead, E+H seems to argue that because the Agreement is of an indefinite duration, it intrinsically cannot be "renewed."  This argument goes too far. Not only does it stray from the Act's clear accommodation of agreements of indefinite duration, but it tends to give the term "renewed" a meaning more like "re-executed."

is not at issue in the same way here because the 2014 amendment applies to agreements "entered into, renewed or amended *on or after*" August 1, 2014.

Because E+H's argument would require us to give "renewed" two different meanings within the Act, we cannot find it persuasive. See Minn. Stat. § 645.31(1); In re Phillips' Trust, 90 N.W.2d 522, 529 (Minn. 1958) ("In accordance with the general rule of construction that a statute should be read as a whole, the provisions introduced by an amendatory act should, as to future transactions, be read together with the provisions of the original section that were reenacted without change by the amendatory act as if they had all been originally enacted as one section." (footnote omitted)).

E+H also argues that the "textual and structural differences between the 1991 and 2014 amendments" show legislative intent in favor of giving "renewed" a different definition in the latter. We cannot agree. In providing the effective date and scope of application, the 2014 amendment used language similar to, and yet more expansive than, the language used in the 1991 amendment. That is, instead of applying merely to those agreements "entered into or renewed on or after" the effective date, the 2014 amendment applies to those "entered into, renewed, *or amended* on or after that date." 2014 Minn. Laws ch. 165, § 1 (emphasis added). To the extent this language is different, it does the work of making the 2014 amendment applicable to *more* agreements, not fewer. It does no work in favor of E+H.

Finally, E+H argues our interpretation reads a retroactive application into the statute. We disagree. In accepting the definition of "renewed" as provided by the Minnesota legislature, we give full effect to the legislature's intent that the amendment would apply to all sales representative agreements "entered into, renewed or amended *on or after*" the amendment's effective date of August 1, 2014. Id. (emphasis added). The parties have had notice of the meaning of "renewed" in the Act since 1991, *before* they formed their contractual relationship, and have had notice of the anti-waiver provision and its expansive application since 2014, before the termination of their relationship. Further, Engineered Sales' claim is based only on actions taken by E+H after August 1, 2014, not before. Our ruling gives effect to the

Minnesota legislature's clear intent "to prioritize the [Act]'s protections" for the rights of sales representatives "over parties' choice-of-law" provisions, <u>Hedding Sales & Serv. v. Pneu Fast Co.</u>, No. 18-1233 (JRT/SER), 2019 WL 79006, at \*4 (D. Minn. Jan. 2, 2019), and prevent parties from circumventing the Act's notice provisions.

Because Engineered Sales continued to solicit orders with E+H's "consent or acquiescence" after August 1, 2014, the parties' Agreement was renewed after August 1, 2014, making the anti-waiver provision applicable to its terms. Because the parties' Indiana choice-of-law provision would allow E+H to circumvent the requirements of the Act in this case, the provision is void and unenforceable under Minn. Stat. § 325E.37, subd. 7. We reverse and remand to the district court for a ruling as to whether E+H had "good cause" and otherwise violated the Act in its termination of the Agreement.

SMITH, Chief Judge, dissenting.

I respectfully dissent. As the district court observed, "[t]he 1991 amendment applies *specifically to the revisions to section 1 of the MTSRA*[4]" as originally enacted in 1990 and should not be read as "broadly apply[ing] to all provisions of the MTSRA, including subsequent amendments relating to other aspects of the act." *Engineered Sales, Co. v. Endress + Hauser, Inc.*, No. CV 17-3456 (DSD/ECW), 2019 WL 955074, at \*6 (D. Minn. Feb. 27, 2019). A plain language reading of the applicable session laws supports this conclusion. *See State v. Boecker*, 893 N.W.2d 348, 353 (Minn. 2017) ("[S]ession laws are relevant when interpreting the plain language of a statute. . . . We have previously looked to the text of the session laws as the primary evidence of the laws of Minnesota.").

---

[4]"MTSRA" stands for "Minnesota Termination of Sales Representatives Act."

The MTSRA originally contained five subdivisions, as set forth in Section 1 of the 1990 session law.[5] Section 5 of the 1990 session law provided the "EFFECTIVE DATE" of the MTSRA: "Section 1 is effective August 1, 1990, and applies to any sales representative agreements entered into or *renewed* on or after that date." 1990 Minn. Laws ch. 539, § 5 (emphasis added). At that time, the Minnesota legislature did not define "renewed." *See id.*

In 1991, the Minnesota legislature amended the MTSRA by modifying certain language in all five existing subdivisions and adding a new, sixth subdivision. *See* 1991 Minn. Laws ch. 190, § 1. The "APPLICATION" section of the 1991 amendment set forth the amendment's effective date and defined "renewed"—the term left undefined in the original enactment:

> (a) Except as provided in paragraph (b), *section 1 [of the 1991 amendment] applies to a sales representative agreement entered into or renewed on or after the effective date of this act* [(August 1, 1990)]. A sales representative agreement is *renewed on or after the effective date of section 1 if*:
>
>> (1) the period specified in the agreement has expired or expires, but the relationship has continued or continues, either for a new specified period or for an indefinite period; or
>>
>> (2) *the agreement is for an indefinite period*, and with the principal's consent or acquiescen[c]e, the sales representative solicits orders on or after the effective date of section 1.

*Id.* at § 2 (emphases added).

---

[5]The sections of each session law are unique to that session law. *Compare* 1991 1991 Minn. Laws ch. 190, § 1 (amending Minn. Stat. § 325E.37, subd. 6, *with* 2007 Minn. Laws. ch. 135, art. 3, § 18 (amending Minn. Stat. § 325E.37, subd. 6).

The preamble to the 1991 amendment described one of its purposes as "clarifying certain provisions" of the MTSRA as it was originally enacted in 1990. *See id.* at preamble. In light of the 1991 amendment's preamble, the Minnesota Court of Appeals "view[ed] the 1991 definition of 'renewed' as a clarification." *New Creative Enters.*, 494 N.W.2d at 511. "[C]larifications are to be read into statutory laws retroactively." *Id.* Thus, the court applied the 1991 amendment's definition of "renewed" to "a term undefined in [the] 1990 statute." *Id.* at 510. "[I]ts technical definition of 'renewed' related back to the original August 1, 1990 effective date of the MTSRA." Appellee's Br. at 14. Applying the 1991 amendment's definition of *renewed* to the effective date provision of the MTSRA as originally enacted yields the following result: "Section 1 [setting forth the five subdivisions of the MTSRA] is effective August 1, 1990, and applies to any sales representative agreements entered into or *renewed* on or after that date," 1990 Minn. Laws ch. 539, § 5, "if . . . the agreement is for an indefinite period, and with the principal's consent or acquiescence, the sales representative solicits orders on or after the effective date of section 1." 1991 Minn. Laws ch. 190, § 2(a)(2). In other words, the Minnesota legislature's application of the 1991 amendment to the MTSRA as originally enacted "manifestly made it known that *any* sales representative agreement subject to Minnesota law and under which a sales representative solicited orders after August 1, 1990 would be subject to the MTSRA." Appellee's Br. at 14 (emphasis added).

As E+H correctly notes, "This was the state of the law when E+H and ESC entered their contract in 2001 and included an Indiana choice of law provision." Appellee's Br. at 13. At that time, the MTSRA did not bar choice-of-law provisions like the one the parties included in their contract. *See Hagstrom v. Am. Cir. Breaker Corp.*, 518 N.W.2d 46, 49 (Minn. Ct. App. 1994). In *Hagstrom*, decided shortly after *New Creative Enterprises*, the Minnesota Court of Appeals gave effect to the parties' choice-of-law provision calling for the application of North Carolina law. *Id.* at 48–49. The court explained:

-10-

The Minnesota legislature enacted the Termination of Sales Representatives Act in 1990, one year after amending the Minnesota Franchise Act to override contractual choice of law provisions. *See* 1990 Minn. Laws Ch. 539, § 1. The Termination of Sales Representatives Act does not contain a similar provision restricting choice of law provisions. The legislature could have included such a provision, but did not.

*Id.*

Thirteen years *after* the parties entered into the Agreement, the Minnesota legislature amended Minn. Stat. § 325E.37 to override contractual choice-of-law provisions. *See* 2014 Minn. Laws ch. 165, § 1. The 2014 amendment provided:

CHAPTER 165—S.F. No. 2108

An act relating to commerce; prohibiting certain practices in connection with a sales representative agreement; amending Minnesota Statutes 2012, section 325E.37, by adding a subdivision.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

Section 1. Minnesota Statutes 2012, section 325E.37, is amended by adding a subdivision to read:

Subd. 7. Prohibition of inclusion of certain unfair contract terms in sales representative agreement. (a) No manufacturer, wholesaler, assembler, or importer shall circumvent compliance with this section by including in a sales representative agreement a term or provision, whether express or implied, that includes or purports to include:

(1) an application or choice of law of any other state; or

(2) a waiver of any provision of this section.

(b) Any term or provision described in paragraph (a) is void and unenforceable.

EFFECTIVE DATE. This section is effective August 1, 2014, and applies to sales representative agreements entered into, renewed, or amended on or after that date.

*Id.* (italics and bold omitted).

The 2014 amendment differs markedly from the 1991 amendment. Unlike the preamble to the 1991 amendment, the 2014 amendment does not describe itself as a clarifying amendment that retroactively applies to contracts entered into prior to August 1, 2014. Instead, the 2014 amendment states that the statutory changes—the creation of the subdivision 7—became "effective *August 1, 2014*, and appl[ied] to sales representative agreements entered into, renewed, or amended on or after that date." 2014 Minn. Laws ch. 165, § 1 (emphasis added). Had the Minnesota legislature intended for its prohibition on choice-of-law provisions to apply to sales representative agreements "entered into, renewed, or amended" at the Act's 1990 inception, it would have used the same language that appears in the 1991 amendment. It would have expressly applied the prohibition to sales representative agreements "entered into or renewed on or after *the effective date of this act*." 1991 Minn. Laws ch. 165, § 2(a) (emphasis added). To apply the 1991 amendment's definition of *renewed* to the 2014 amendment effectively achieves this interpretation in spite of the 2014 amendment's effective-date language.

In summary, the 1991 amendment defines *renewed* "in the context of establishing whether revisions made to the MTSRA in 1991 applied to existing sales representative agreements." *Engineered Sales*, 2019 WL 955074, at *5. As a clarifying amendment, it was meant to relate back to *only* the original enactment of the MTSRA in 1990. *See New Creative Enters*., 494 N.W.2d at 511 ("We view the 1991 definition of 'renewed' as a clarification [of the original act] . . . ."). As E+H explains, by relating the technical definition of *renewed* back to the MTSRA's August 1, 1990 effective date, "the Legislature clearly and manifestly made it known that any sales representative agreement subject to Minnesota law and under which a

-12-

sales representative solicited orders after August 1, 1990[,] would be subject to the MTSRA." Appellee's Br. at 14. By contrast, in passing the 2014 substantive amendment to the MTSRA, the Minnesota "[l]egislature did not suggest, directly or indirectly, that it intended for the 1991 technical definition of 'renewed' to apply in 2014." *Id.* at 15.

Because the 2014 amendment does not incorporate the 1991 clarifying amendment's definition of *renewed*, the plain meaning of the word applies. *See Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016). The majority posits that "[t]he 2014 amendment provides no indication that the term 'renewed' should be defined any differently" than how it is defined in the 1991 amendment and criticizes E+H for not "explain[ing] what this definition of the term would mean in practical application." Part III, *supra*. Black's Law Dictionary defines *renewal* as, among other things, "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." Renewal, Black's Law Dictionary (11th ed. 2019) (identifying "renew" as the verb form). This definition, therefore, would not encompass contracts of an indefinite duration like the Agreement. Indeed, a number of state statutes distinguish between a *renewed* agreement and an agreement of an indefinite duration. *See, e.g.*, Act of June 17, 2011, ch. 1039, 2011 Tex. Sess. Law Serv. § 4(a) (providing that Texas act applies to an "agreement entered into or *renewed* on or after the effective date of this Act; *and* (2) a[n] . . . agreement that was entered into before the effective date of this Act, has *no expiration date*, and is a continuing contract" (emphases added)); Cal. Bus. & Prof. Code § 22927 (providing that California Act applies "to dealer contracts in effect on the effective date of this act that have *no expiration date* and that are continuing contracts, *and* all other dealer contracts entered into or *renewed* on or after the effective date of this act" (emphases added)).

Because the Agreement was not *renewed* after the effective date of the 2014 amendment, the prohibition on choice-of-law provisions is inapplicable and the

parties' choice-of-law provision is enforceable. Accordingly, I would affirm the district court's grant of summary judgment to E+H on ESC's MTSRA claim.

_____