# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1310

———————————————

Jan Kuklenski

*Plaintiff - Appellant*

v.

Medtronic USA, Inc.

*Defendant - Appellee*

—————————

Appeal from United States District Court
for the District of Minnesota

—————————

Submitted: October 23, 2024
Filed: April 9, 2025

—————————

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

—————————

KELLY, Circuit Judge.

After Medtronic USA, Inc. terminated Jan Kuklenski, she filed this suit in
federal court asserting that Medtronic violated the Minnesota Human Rights Act

(MHRA) by terminating her because of her disability.[1] The district court[2] granted summary judgment to Medtronic after concluding that Kuklenski could not bring claims under the MHRA because she was not an "employee" as defined by the statute. Kuklenski appeals, challenging the court's interpretation of the statutory term. Alternatively, Kuklenski asks us to certify the issue to the Minnesota Supreme Court. After careful consideration, we affirm the court's grant of summary judgment to Medtronic and deny Kuklenski's certification request.

I.

The following facts are undisputed, and we view them in the light most favorable to Kuklenski. Bonomo v. Boeing Co., 63 F.4th 736, 742 (8th Cir. 2023).

Kuklenski started working for Medtronic—a Minnesota-based company—in 1999, and worked for Medtronic until she was terminated in December 2021. Kuklenski has never resided in Minnesota. Kuklenski occasionally traveled to Minnesota[3] for work, but the COVID-19 pandemic prompted Medtronic to order all its employees to work remotely in early 2020. Kuklenski did not travel to Minnesota for work at any time after February 2020.

Beginning in June 2021, Kuklenski went on medical leave. After three months of approved leave, she sought another three months in early September 2021. Medtronic did not keep Kuklenski's job open for her after the initial three-month leave expired, and it filled her position in October 2021. In December 2021, Medtronic formally terminated Kuklenski.

---

[1]Kuklenski raised additional claims that have since been dismissed and are not at issue on appeal.

[2]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

[3]For the reasons explained below, we need not resolve how much time Kuklenski spent in Minnesota for work prior to February 2020.

Kuklenski filed suit in the District of Minnesota, asserting that Medtronic improperly terminated her in violation of the MHRA. The district court found that Kuklenski did not satisfy the MHRA's requirement that she be an "employee" under the Act because she did not have any physical presence in Minnesota for almost two years before she was fired. Thus, the court granted summary judgment to Medtronic.

Kuklenski appeals.

## II.

"We review de novo a district court's grant of summary judgment," Riedl v. Gen. Am. Life Ins. Co., 248 F.3d 753, 756 (8th Cir. 2001), as well as its interpretation of state laws, see Godfrey v. State Farm Fire & Cas. Co., 11 F.4th 601, 602 (8th Cir. 2021). "[S]itting in diversity, we apply the substantive law of the forum state." Olmsted Med. Ctr. v. Cont'l Cas. Co., 65 F.4th 1005, 1008 (8th Cir. 2023) (quoting Chew v. Am. Greetings Corp., 754 F.3d 632, 635 (8th Cir. 2014)). When "interpreting Minnesota law, we are bound by the decisions of the Minnesota Supreme Court." Godfrey, 11 F.4th at 602–03 (quoting Engineered Sales, Co. v. Endress + Hauser, Inc., 980 F.3d 597, 599 (8th Cir. 2020)). Where "the Minnesota Supreme Court has not spoken on a particular issue, we must attempt to predict how the Minnesota Supreme Court would decide it and may consider relevant state precedent, analogous decisions, considered dicta[,] and any other reliable data." Id. (quoting same).

The MHRA protects employees from discrimination in the workplace. See Minn. Stat. § 363A.02. The statute defines an employee as: "an individual who is employed by an employer and who resides or works in this state." Id. § 363A.03, subd. 15. As Kuklenski has never resided in Minnesota, to fall within the statutory definition of employee, she must show that she "works in [Minnesota]." Id. The only dispute on appeal is whether "works in this state" requires some degree of physical presence within Minnesota. Because the Minnesota Supreme Court has not answered this question, we must predict how it would. See Godfrey, 11 F.4th at 603.

"Under Minnesota law, '[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.'" Pitman Farms v. Kuehl Poultry, LLC, 48 F.4th 866, 875 (8th Cir. 2022) (quoting Minn. Stat. § 645.16). We first "determine whether the statute's language . . . is ambiguous" by "constru[ing] the statute's words and phrases according to their plain and ordinary meaning." Christianson v. Henke, 831 N.W.2d 532, 536–37 (Minn. 2013) (first quoting Larson v. State, 790 N.W.2d 700, 703 (Minn. 2010); and then quoting In re Fin. Resp. for Out-of-Home Placement Costs for S.M., 812 N.W.2d 826, 829 (Minn. 2012)). To do so, we "may turn to dictionary definitions for terms not otherwise defined in the statute." In re Moratzka, 988 N.W.2d 42, 47 (Minn. 2023). "A statute is ambiguous only if it is subject to more than one reasonable interpretation." State v. Thonesavanh, 904 N.W.2d 432, 435 (Minn. 2017) (quoting 500, LLC v. City of Minneapolis, 837 N.W.2d 287, 290 (Minn. 2013)). If there is no ambiguity, we enforce the statute's plain meaning. See Christianson, 831 N.W.2d at 537; see also Minn. Stat. § 645.16 ("When the words of a law . . . are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

The Minnesota legislature added the definition of "employee" to the MHRA in 1987, but it did not separately define "works" or "in." See Minn. Stat. § 363.01, subd. 39 (Supp. 1987). Thus, we consider dictionary definitions[4] to determine whether the legislature's intent is clear. See In re Moratzka, 988 N.W.2d at 47. The word "works," used as a verb, means "to perform work or fulfill duties regularly for wages or salary," Merriam-Webster's New Collegiate Dictionary 1359 (9th ed. 1985), or "[t]o be employed; have a job," American Heritage Dictionary 1995 (5th ed. revised 2018). Relatedly, "work" is defined as "the labor, task, or duty that is one's accustomed means of livelihood." Merriam-Webster's New Collegiate

_____

[4]Minnesota courts appear to look to both dictionary definitions at the time the relevant statute was enacted, see In re Minn. Living Assistance, Inc., 934 N.W.2d 300, 304 (Minn. 2019); State v. Larsen, 901 N.W.2d 433, 437–38 (Minn. Ct. App. 2017), and contemporary dictionary definitions, see In re Moratzka, 988 N.W.2d at 47. In this case, it makes no difference which timeframe we use.

Dictionary, *supra*, at 1358. The word "in" is defined as "a function word to indicate inclusion, location, or position within limits," id. at 607, or "[w]ithin the limits, bounds, or area of," American Heritage Dictionary, *supra*, at 885. Thus, one who "works in" Minnesota "perform[s]" "the labor, task, or duty" of employment "[w]ithin the limits, bounds, or area of" the state.

The statutory context supports this reading. See State v. Pakhnyuk, 926 N.W.2d 914, 920 (Minn. 2019) (explaining we must "not examine[] in isolation" the statutory language); Wocelka v. State, 9 N.W.3d 390, 394 (Minn. 2024) ("[W]e determine plain meaning by looking to the text and textual context of the statute."). The neighboring verb in the statute is "resides," which is also limited by the word "in." Minn. Stat. § 363A.03, subd. 15 (defining an employee as a person "who resides or works in this state"). The meaning of "reside" is "[t]o live in a place permanently or for an extended period," American Heritage Dictionary, *supra*, at 1493, or "to dwell permanently or continuously," Merriam-Webster's New Collegiate Dictionary, *supra*, at 1003. Putting this together with the definition of "in," one who "resides . . . in" Minnesota lives "[w]ithin the limits" of the state either "permanently or for an extended period" of time. Minn. Stat. § 363A.03, subd. 15. The plain meaning of this phrase requires some degree of physical presence in Minnesota. Thus, reading "works in" alongside the parallel phrase "resides . . . in" supports interpreting "works in this state" to also require physical presence in Minnesota. See id.

And "[t]hough statutory purpose is typically only considered after a statute is determined to be ambiguous," we may consider it before finding a statute ambiguous when "the statutory purpose is part of the plain text of the [statute] itself." In re Moratzka, 988 N.W.2d at 49. Kuklenski correctly points out that the MHRA "shall be construed liberally for the accomplishment of the [statute's] purposes." Minn. Stat. § 363A.04; see also Rasmussen v. Two Harbors Fish Co., 832 N.W.2d 790, 795 (Minn. 2013). But she fails to acknowledge the statute's express statement that "[i]t is the public policy of this state to secure for *persons in this state*, freedom from discrimination," because "[s]uch discrimination threatens the rights and privileges

of *the inhabitants of this state*." Minn. Stat. § 363A.02, subd. 1(a), (b) (emphases added). The phrases "persons in this state" and "inhabitants of this state" support interpreting the purpose of the MHRA as protecting people who have a physical presence in the state. See Minn. Stat. § 363A.02, subd. 1(a), (b); see also Merriam-Webster's New Collegiate Dictionary, *supra*, at 622 (defining "inhabitant" as "one that occupies a particular place regularly, routinely, or for a period of time"); American Heritage Dictionary, *supra*, at 902–03 (defining "inhabitant" as "[o]ne that inhabits a place, especially as a permanent resident," and defining "inhabit" as "[t]o live or reside in").

Kuklenski counters that "in" need not be defined by physical boundaries. She offers examples of a lawyer appearing "in" court virtually, and a presidential candidate who runs "in" a state without physically setting foot inside the state's boundaries. We agree that the word "in" is susceptible of these meanings, but it is not reasonable to interpret "in" that way here. See Thonesavanh, 904 N.W.2d at 436 (considering the plain meaning of terms by looking to "the common and ordinary meanings of the[] terms"). The common meaning of "works in this state," as applied to Kuklenski's case, is that the person is physically present "[w]ithin the limits, bounds, or area of" Minnesota. See ILHC of Eagan, LLC v. Dakota County, 693 N.W.2d 412, 419 (Minn. 2005) (determining plain meaning of a statute "from its language as applied to the facts of the particular case").

Next, we must consider what kind of physical presence suffices. The statute says "resides" and "works," which are present tense verbs. See Minn. Stat. § 363A.03, subd. 15. According to Kuklenski, however, the MHRA's use of the present tense contemplates "customary or habitual" work—not continuous activity. She asserts that her past visits to Minnesota establish that she "works in" the state, and she describes her absence from Minnesota as a "temporary interruption" in her customary work schedule.

We agree that the statute's definition of employee does not necessarily exclude a person who works both in and outside the state of Minnesota. Nor does

-6-

the statute require that a person be physically present in Minnesota at the time of the discriminatory conduct in order to qualify as an employee under the MHRA. But as the district court noted, Kuklenski was not present in Minnesota from February 2020 until she was terminated in December 2021. This undisputed timeline does not support a finding that Kuklenski's absence from the state was temporary. Any travel to Minnesota had stopped altogether for almost two years. To the extent Kuklenski relies on past travel to, and physical presence in, Minnesota, there is no evidence in the record of a "customary or habitual" action that could then be "interrupted." Whatever the requirements for how often a person must travel to Minnesota—or how long they must stay there—for purposes of protection under the MHRA, Kuklenski has not satisfied them here.[5]

Kuklenski asserts that we should consider her other contacts with Minnesota, beyond physical presence, such as the fact that her supervisors were based in the state and that she communicated with clients in the state. She argues for what she calls a "contact-based approach," proposing several factors to consider in determining whether a person is an employee under the MHRA. But the statute says nothing of a multifactor test. See id. And as we have explained, the statute requires physical presence in Minnesota. Kuklenski cannot satisfy the "works in" requirement by pointing only to non-physical-presence contacts with the state.

We affirm the district court's grant of summary judgment to Medtronic.

III.

Kuklenski asks us to certify to the Minnesota Supreme Court the question of how to define employee under the MHRA. We may exercise our "independent

_____

[5]Kuklenski also argues that she would have been physically present in Minnesota post-February 2020 if not for the pandemic and her eventual medical leave, but we find no exception in the text of the MHRA that would accommodate her reason for not being physically present. See Minn. Stat. § 363A.03, subd. 15.

discretion . . . to decide whether certification is appropriate." <u>Godfrey</u>, 11 F.4th at 603 (quoting <u>Knowles v. United States</u>, 29 F.3d 1261, 1265 n.8 (8th Cir. 1994)).

As an initial matter, we note that Kuklenski sought certification from the district court, but not until after the court granted summary judgment to Medtronic and dismissed the case. <u>See</u> <u>Floyd Cnty. Mut. Ins. Ass'n ex rel. McGregor v. CNH Indus. Am. LLC</u>, 18 F.4th 1024, 1027 n.2 (8th Cir. 2021) ("We generally do not allow certification after a case has been decided." (alteration omitted) (quoting <u>Jung v. Gen. Cas. Co. of Wis.</u>, 651 F.3d 796, 801 (8th Cir. 2011))). Further, she was on notice of the district court's skepticism of her proposed contact-based approach from the court's order on Medtronic's motion to dismiss.[6] <u>See</u> <u>id.</u> (denying certification because, "even though the district court's request for supplemental briefing put the parties on notice that it was considering the question, [the plaintiff] did not request certification until after the district court's adverse judgment"). Kuklenski also filed her complaint in federal court, and "[w]e accept the basic principle that federal courts 'should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction.'" <u>Smith v. SEECO, Inc.</u>, 922 F.3d 406, 412 (8th Cir. 2019) (quoting 17A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 4248 (3d ed. 2017)). But even putting aside Kuklenski's litigation strategy, this case "does not present a close question of state law." <u>Godfrey</u>, 11 F.4th at 604. We decline to exercise our independent discretion to certify the question.

---

[6]In its order denying in part Medtronic's motion to dismiss, the district court acknowledged that other cases in the District of Minnesota had applied a contact-based approach, but it said that approach "may fairly be criticized because it 'treat[s] the question almost as one of personal jurisdiction rather than as one of statutory interpretation.'" <u>Kuklenski v. Medtronic USA, Inc.</u>, 635 F. Supp. 3d 726, 734–35 (D. Minn. 2022) (quoting <u>Walton v. Medtronic USA, Inc.</u>, No. 22-cv-050, 2022 WL 3108026, at *2 (D. Minn. Aug. 4, 2022)). The court also noted that there was no indication that the Minnesota legislature intended such a test to apply. <u>Id.</u> at 735. And though the court expressly declined to resolve the matter, it noted that it would return to the question "after the Parties have weighed in and on a more complete factual record." <u>Id.</u>

We affirm.

_____