United States Court of Appeals
For the Eighth Circuit
No. 24-3317

Krishnan Ghosh

*Plaintiff - Appellant*

v.

Abbott Laboratories, Inc.; Cardiovascular Systems, Inc.

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: June 12, 2025
Filed: March 26, 2026

——————————

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Krishnan Ghosh appeals the district court's[1] Order granting defendants' motion to dismiss, denying Ghosh's motion to amend his First Amended Complaint as futile, and dismissing his wrongful employment termination claims against Abbott

———————————————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Laboratories, Inc. (ALI) and Cardiovascular Systems, Inc. (CSI), ending a lawsuit with a long, tortured procedural history. Ghosh v. Abbott Lab'ys, Inc., No. 24-1144, 2024 WL 4534724 (D. Minn. Oct. 21, 2024) (Ghosh). Ghosh presents two issues on appeal -- the court erred in granting the motion to dismiss and in denying his motion to amend. For the following reasons, we affirm.

## I. Background

In early February 2023 Ghosh, a resident of Hawaii, entered into a National Employment Agreement with CSI to become its District Sales Manager for Hawaii (the "Agreement").[2] CSI is a medical device company focused on treating complex artery diseases headquartered in St. Paul, Minnesota. Ghosh agreed that he would participate in CSI's mandatory certification and training process before he would be allowed to fully perform clinical and commercial services in Hawaii. He began the process in February, and completed certification in late May. During this period, he visited Minnesota twice, spending a total of 12 days in the State: February 26th to March 3rd, and April 23rd to 28th. In Minnesota, he visited hospitals, interacted with physicians, and performed case observations. In Hawaii, he participated in remote meetings with CSI's Minnesota-based staff. Meanwhile, in April 2023, ALI acquired CSI and CSI became a wholly-owned subsidiary of ALI, which is a wholly-owned subsidiary of Abbott Laboratories.

---

[2] The record on appeal does not contain a copy of the Agreement, so we must rely for its terms on the parties' and the district court's references to it in pleadings and briefs. We would be justified in dismissing the appeal for this shameful omission. See Fed. R. App. P. 30(a)(1)(D) ("The appellant must prepare and file an appendix to the briefs containing . . . (D) other parts of the record to which the parties wish to direct the court's attention.") It is undisputed the Agreement provides that the "Agreement and the rights of the parties will be governed by and construed and enforced in accordance with the laws of the State of Minnesota."

Shortly after Ghosh completed this training, CSI terminated his employment. Ghosh alleges CSI fired him because, in March, April, and early May, he uncovered and reported illegal conduct by CSI in violation of the federal Anti-Kickback Statute. See 42 U.S.C. § 1320a-7b(b). Some months later, CSI disclosed that it terminated Ghosh for "conduct-related reasons, including that he aided a competitor over his own employer" and "engaged in demeaning and disrespectful behavior."

In January 2024, Ghosh filed a complaint against ALI in Minnesota state court alleging a violation of the Minnesota Whistleblower Act (MWA). See Minn. Stat. § 181.932. ALI removed and moved to dismiss. Ghosh then made an untimely attempt to amend, which the court denied. Ghosh voluntarily dismissed the case and, two days later, Ghosh filed a "nearly identical" complaint against ALI without disclosing the prior suit.[3] ALI again moved to dismiss. Ghosh filed a First Amended Complaint as a matter of right, adding CSI, his employer, as a codefendant and a new claim under the Hawaii Whistleblowers' Protection Act (HWPA). Haw. Rev. Stat. § 378-62. In May 2024, the codefendants again moved to dismiss. Ghosh moved to amend his amended complaint to add Abbott Laboratories, ALI's parent company, as a defendant. The proposed amended complaint did not add new claims but added fact allegations about CSI sales representatives' contacts with Minnesota, including:

-- Information about the corporate relationships among the defendants, including assertions that contradicted those previously alleged;
-- that during his training in Minnesota, Ghosh provided "valuable expertise" to the trainers; and

---

[3]Ghosh filed a letter with the court explaining that he chose to refile to have "the case heard on the merits as soon as possible." The district court noted refiling is not more efficient than moving to amend the first complaint. "The more reasonable interpretation is that he did not want to proceed before the district judge and the magistrate judge assigned to the first case." Ghosh, 2024 WL 4534724, at *3, *4 n.5.

-- that CSI sales representatives typically return to Minnesota for additional training annually, and Ghosh expected to do so.

## II. The Order Being Appealed

The district court granted defendants' motion to dismiss in a detailed order. First, it held that Ghosh's First Amended Complaint failed to state an MWA claim. The MWA provides that an employer shall not discharge an "employee" because he "reports a violation or suspected violation of any federal or state law." Minn. Stat. § 181.932 subd. 1. MWA defines "employee" as "a person who performs services for hire in Minnesota for an employer," and "employer" as "any person having one or more employees in Minnesota." Minn. Stat. § 181.931 subd. 2 and 3. The court ruled that Ghosh did not meet this statutory definition because training does not constitute "performs services for hire," and because being present in Minnesota just twelve days over a month before his termination does not meet the statute's ongoing physical presence requirement. Ghosh, 2024 WL 4534724, at *4-6. Second, the court held that Ghosh waived his right to sue under the HWPA by agreeing that "the rights of the parties will be governed by . . . the laws of the State of Minnesota." Id. at *6.

On appeal, Ghosh argues that (1) commercial activity is not required by the phrase "performs services for hire," and alternatively, his actions during training meet that requirement; (2) the proper test for determining the "in Minnesota" requirement is a "contacts-based approach," not one of physical presence, and alternatively, his attendance and completion of CSI's Minnesota-based training process satisfies the location requirement; and (3) public policy prevents waiver of his HWPA claim.

Ghosh further argues the district court erred in denying as futile his motion to amend the First Amended Complaint. A district court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But the right is not automatic, and the district court may deny the motion due to "futility of the

-4-

amendment." Anderson v. Bank of the W., 23 F.4th 1056, 1060 (8th Cir. 2022), quoting Moses.com Sec., Inc., v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005). An amendment is futile if it would fail to withstand a motion to dismiss under Rule 12(b)(6). Zutz v. Nelson, 601 F.3d 842, 850-51 (8th Cir.), cert denied, 562 U.S. 1005 (2010).

We review the grant of the motion to dismiss the First Amended Complaint *de novo*. Stursberg v. Morrison Sun PLLC, 112 F.4th 556, 560 (8th Cir. 2024). We review the denial of leave to amend for abuse of discretion and questions of futility *de novo*. Anderson, 23 F.4th at 1061.

### III. Discussion

**A. The MWA Claims.** We apply the substantive law of Minnesota in this diversity action. Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), that means "we must remain grounded in Minnesota law and determine how the Supreme Court of Minnesota would apply [the] law in this case." PHL Variable Ins. Co. v. Bank of Utah, 780 F.3d 863, 867 (8th Cir. 2019).

1. Was Ghosh an MWA Employee? This is a question of statutory interpretation. Under Minnesota law, the goal is to "ascertain and effectuate the intention of the legislature." Pitman Farms v. Kuehl Poultry, LLC, 48 F.4th 866, 875 (8th Cir. 2022), quoting Minn. Stat. § 645.16. We begin by construing the statute's words and phrases according to their "plain and ordinary" meaning, turning to dictionary definitions for words not defined in the statute. Kuklenski v. Medtronic USA, Inc., 134 F.4th 528, 531 (8th Cir. 2025) (quotations omitted).[4] The district court correctly concluded that Ghosh did not meet the MWA's definition of employee

---

[4]Minnesota courts look to both contemporary dictionary definitions and those at the time of enactment. Id. at 531 n.4 (citations omitted).

because he neither "perform[ed] services for hire" nor did so "in Minnesota." Ghosh, 2024 WL 4534724, at *4-7.

The MWA does not define "performs services for hire," and there is no controlling case from the Supreme Court of Minnesota. Turning to dictionary definitions, "perform" is defined as "to carry out; execute; do." The Random House Dictionary of the English Language 1439 (2d ed. 1987). The phrase "services for hire" then clarifies that this act must be commercial in nature. These definitions establish that the plain meaning of the phrase includes two subparts: an "employee" engages in an intentional and active task; and the task ("services") is commercial in nature ("for hire"). Holding otherwise would render the phrase meaningless.

When applied here, Ghosh's 39-page First Amended Complaint did not satisfy either subpart. It alleges that he visited Minnesota to attend training, an inherently passive activity. His training tasks included case observations, physician visits, and on-site training sessions, all in stark contrast to more active tasks such as marketing and selling CSI medical devices. The goal of CSI's training (or any training) was to learn CSI's products and business, including how they are used in arterial surgery. Training was a way to ensure Ghosh would safely and effectively perform sophisticated commercial medical care activity in the future in his Hawaii sales territory. Though his training tasks included participation in some case observations that resulted in CSI sales, the training sessions and live case observations centered around non-commercial tasks. Ghosh's proposed amended complaint attempted to bolster his argument by adding that he "provided valuable expertise" to the trainers. But he did not allege he engaged in sales with Minnesota medical providers. He was engaged in training, not sales, when he was in Minnesota. "Indeed," the district court noted: "if training were sufficient, then any employee of a Minnesota company who comes to the state for training would be protected by the MWA. The Minnesota legislature's limited definition of 'employee' indicates that it had no such intention." Ghosh, 2024 WL 4534724, at *5.

-6-

2. The Ongoing Physical Presence Requirement.  Even if Ghosh's actions in Minnesota satisfied the "performs services for hire" requirement, his claim fails because he cannot meet the ongoing physical presence requirement set forth in the statutory phrase, "in Minnesota."  Though not previously considered by the Supreme Court of Minnesota, we recently examined a similar phrase -- "in this state" -- in the analogous Minnesota Human Rights Act and held that "physical presence in Minnesota" is required.  Consequently, an individual who occasionally traveled to Minnesota for work but had not been to the State in over two years did not work "in this state."  Kuklenski, 134 F.4th at 530-33.  Likewise, "in Minnesota" requires ongoing physical presence, a requirement Ghosh did not satisfy by alleging one-week trips for training and the expectation he would return for future CSI functions.

Ongoing physical presence is mandated by the plain language of the statute.  The word "in" means "[w]ithin the limits, bounds, or area of."  Id. at 531, citing American Heritage Dictionary 1995 (5th ed. revised 2018).  Thus, an individual is an employee if he "performs services for hire" within the limits, bounds, or area of Minnesota, a geographic entity with set boundaries.  It follows, then, that the individual must be physically present in the State, as this is the only way to be within the "limits, bounds, or area" of Minnesota.[5] And use of the present tense of the word "perform" in the phrase "performs services for hire in Minnesota" reflects an intent to limit application to those currently performing services for hire in Minnesota, not those who "have performed" in the past or "will perform" in the future.

We recognize that "ongoing physical presence" does not automatically exclude individuals who lack complete physical presence in Minnesota.  For example, an individual who works in Minnesota and in another state may potentially have an

---

[5]Ghosh argues that the exclusion of independent contractors from the definition of "employee" reflects an intent that remote workers be covered by the MWA.  But the definition of employee was added in 1987, long before remote work became commonplace.  1987 Minn. Laws 140.

MWA claim. As would someone who works in Minnesota but is terminated while physically present in another state. But whatever the exact parameters for "ongoing physical presence," -- including how often and for how long an individual must visit Minnesota -- Ghosh has not satisfied them here.

What matters in determining whether an MWA claimant satisfies the "in Minnesota" requirement is ongoing physical presence in the State -- for Ghosh, a total of 12 days out of his total employment of approximately 118 days over a span of several months. We agree with the district court such sparse and sporadic presence is insufficient. His job as District Sales Manager for Hawaii was in Hawaii, not Minnesota. His last visit to Minnesota, April 23-28, 2024, was over a month before his termination. While he may have expected to return to Minnesota for more CSI training, CSI was acquired by ALI before termination; moreover, such sporadic, uncertain future visits do not satisfy MWA's ongoing physical presence requirement. Ghosh's argument that the proper test for evaluating "in Minnesota" is a "contacts-based approach" directly contradicts the statute's language, "in Minnesota," and has not been applied in MWA cases.

The district court properly dismissed Ghosh's MWA claim.

**B. The HWPA Claim.** In Ghosh's First Amended Complaint (his fourth pleading in less than four months), he added for the first time a claim alleging violations of the HWPA. Defendants moved to dismiss this claim, arguing the Agreement's choice-of-law provision -- "this Agreement and the rights of the parties will be governed by and construed and enforced in accordance with the laws of the State of Minnesota" -- waived Ghosh's right to sue under the HWPA. The district court agreed, concluding (i) "'rights of the parties' plainly includes . . . [the right] to file a claim under an applicable whistleblower statute," (ii) statutory whistleblower statutory claims "are waivable" unless the legislature expressly makes them non-waivable, and (iii) the Hawaii legislature did not make the HWPA non-waivable.

-8-

Thus, Ghosh's First Amended Complaint fails to state an HWPA claim. Ghosh, 2024 WL 4534724, at *6.

On appeal, Ghosh argues that he "qualifies" under the HWPA as "an employee of [ALI/CSI] who was required to report violations of law to his employer," and if he has no claim under the MWA, "it is against public policy and the interest of justice not to allow Mr. Ghosh to [file a] claim under the [HWPA]" due to a choice of law provision. In his reply brief, without even noting the choice-of-law authorities on which the district court relied, Ghosh argues "this Court should rule to set a critical precedent to protect the interests of remote workers such as Mr. Ghosh, given the imminent threat to state and national public policy, which Whistleblower laws were conceived and designed to protect." In other words, governing Minnesota law does not matter, just do the right thing as a matter of public policy. We decline the invitation.

As Minnesota is the forum state, we apply its choice of law rules. Nw. Airlines, Inc. v. Astraea Aviation Servs., 111 F.3d 1386, 1393 (8th Cir. 1997), citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Minnesota generally enforces choice-of-law provisions. Id. at 1392 (citation omitted). Under Minnesota law, "except as limited by public policy a person may waive any legal right, constitutional or statutory." State ex rel. Johnson v. Indep. Sch. Dist. No. 810, Wabasha Cnty., 109 N.W.2d 596, 602 (Minn. 1961), citing 20 Dunnell, Dig. (3 ed.) §§ 10134, 10134a, 10135; see Northwest Airlines, 111F.3d at 1392 n.4 (holding a Texas deceptive trade practices claim "not available under Minnesota law"). However, a legislature may provide that certain statutory claims are not waivable. For example, the Hawaii legislature added the following provision in its landlord-tenant law: "A tenant or landlord may not waive or agree to forego rights or remedies under this chapter." Haw. Rev. Stat. § 521-31. There is no comparable provision in the HWPA and no statutory indication the legislature intended to prevent its waiver. See Haw. Rev. Stat. § 378-62. If anything, the inclusion of a two-year statute of

limitations suggests it deemed the HWPA waivable. Haw. Rev. Stat. § 378-63. Ghosh cites no case stating that the HWPA is unwaivable, and Hawaii courts routinely enforce its statute of limitations. E.g., Lalau v. City & Cnty. of Honolulu, 938 F. Supp. 2d 1000, 1021 (D. Haw. 2013).

Because the HWPA is waivable, the issue is whether the Agreement waives it. The Agreement broadly states, without exception: "this Agreement and the *rights of the parties*" will be governed by the laws of Minnesota. This extension of Minnesota law to the "rights of the parties" clearly includes Ghosh's right to file claims under an applicable whistleblower statute, as the district court held. But the court then concluded that, because whistleblower claims are waivable and the Hawaii legislature did not expressly prevent the HWPA from being waived by the parties' choice of law provision, "Ghosh does not have a tenable claim under the HWPA." Ghosh, 2024 WL 4534724, at *6. We agree.

"Minnesota traditionally enforces parties' contractual choice of law provisions. Minnesota courts have consistently expressed a commitment to the rule 'that the parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern.'" Hagstrom v. Am. Cir. Breaker Corp., 518 N.W.2d 46, 48 (Minn. App. 1994) (citations and quotations omitted). Applying this standard, the Court enforced the parties' contractual choice of North Carolina law and upheld the termination of a dealer sales representative agreement under North Carolina law that conflicted with the notice requirements of the Minnesota Termination of Sales Representative Act (MTSRA) because that Act, unlike the Minnesota Franchise Act, did not void inconsistent contractual choice of law provisions. The Minnesota Court of Appeals and the District of Minnesota have since followed Hagstrom in more recent cases.

We recognize that cases like Hagstrom enforcing state laws contractually chosen by the parties to bar claims under *Minnesota* statutes do not govern the

-10-

question whether Minnesota courts would allow statutory claims from *other States* when the parties chose Minnesota law to govern the contract. No one cites any case where Minnesota appellate courts addressed that question, and it may be one of first impression.

We find persuasive the reasoning in <u>Warren E. Johnson Cos. v. Unified Brand, Inc.</u>, where the District of Minnesota, applying Minnesota law, dismissed an MTSRA claim as precluded by a contractual choice of law provision that the "Agreement will be construed in accord with the laws of Mississippi." Interpreting and applying <u>Northwest Airlines</u> and <u>Hagstrom</u>, the court explained that the parties "contracted to apply Mississippi law to the Agreement, and the claim . . . under the MTSRA, is so related to the Agreement that the choice of Mississippi law applies to that claim . . . and precludes [plaintiff's] attempt to invoke the protections of the MTSRA." 735 F. Supp. 2d 1099, 1110 (D. Minn. 2010).

Moreover, we note that there is another factor we predict the Supreme Court of Minnesota would find highly relevant here -- Minnesota and Hawaii have parallel whistleblower statutes and Ghosh chose to assert his claim under the MWA. He only asserted an HWPA claim four pleadings later, when it appeared he may have ridden the wrong horse. In this situation, we predict the Supreme Court of Minnesota, invoking principles from the ancient election-of-remedies doctrine, would hold that Minnesota courts will enforce one whistleblower statute, *but not both*. In other words, Ghosh "picked his poison" in suing in Minnesota under the MWA.[6] His

---

[6]Initially, Ghosh likely could have asserted an HWPA claim in a Hawaiian federal or state court, provided there was no forum selection clause. And he still may have that claim in a Hawaiian court, unless his decision to file only in Minnesota now precludes such a suit, or it has become time-barred. Therefore his counsel's disingenuous assertion that our decision will leave terminated remote employees with valid whistleblower claims "without any recourse" is simply wrong.

-11-

belated claim under the HWPA is therefore "not available under Minnesota law." Northwest Airlines, 111 F.3d at 1392 n.4.

On appeal, Ghosh's brief and reply brief cite no case holding that a claim under a foreign State's whistleblower statute is *not* barred by a contractual choice of law provision that the forum State's law broadly governs all claims, and we have found none. Cf. Donnert v. Feld Ent., Inc., 612 F. App'x 657, 662-63 (4th Cir. 2015) (barring claim under Florida Whistleblower Act because contract choice of law provision chose Virginia law, even though it is less protective of whistleblowers). Ghosh does not even acknowledge the district court's reasoning and attempt to distinguish the authorities cited. Rather, he urges us to "set a critical precedent to protect the interests of remote employees such as Mr. Ghosh." It is "a complete injustice to enable companies such as CSI and Abbott to . . . wrongfully terminate [remote] employees without any recourse due to a contractual provision," and public policy dictates not enforcing the agreement due to the remedial nature of the HWPA.

This public policy contention does not establish reversible error. Indeed, it is contrary to Minnesota law that we are obligated to follow in a diversity case. "Minnesota public policy favors the freedom to contract . . . [except] when the particular contract violates some principles which is of even greater importance to the general public." Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 545 (Minn. 2014) (quotation omitted). Ghosh argues dismissing his HWPA claim would constitute a "grave injustice." But Minnesota allows parties to waive their rights as part of an enforceable contract. Ghosh does not argue this contract is not enforceable, so whatever "injustice" arises from his voluntary waiver is not of legal concern.[7]

---

[7]Because Ghosh cannot establish a claim against any defendant, we need not reach whether ALI or Abbott are proper defendants in this action. The duplicative nature of the claims makes them futile even when applied to a defendant added by an amended complaint. See Jackson v. Riebold, 815 F.3d 1114, 1123 (8th Cir. 2016).

**C. Denial of the Motion for Leave to Amend.**  Ghosh argues the district court erred in denying his motion for leave to file an amended complaint, his fifth pleading, because it added allegations showing he was an MWA employee and provided sufficient evidence to bring a valid claim under the HWPA.  The district court concluded that Ghosh was not guilty of bad faith or undue delay in moving to amend but nonetheless denied the motion because the amendments are futile:

> An amendment is futile when it could not survive a motion to dismiss under Rule 12(b)(6).  Because Ghosh's proposed amendments do not include new claims against defendants . . . . [his] claims are legally untenable, even considering the proposed amendment.  The motion to amend will therefore be denied as futile.

Ghosh, 2024 WL 4534724 *4 (citation omitted).  We agree with this analysis and affirm the court's decision that Ghosh's MWA and HWPA claims "are legally untenable, even considering the proposed amendment."  Therefore, we likewise affirm the denial of his motion for leave to amend the First Amended Complaint.

For the foregoing reasons, the judgment of the district court is affirmed.

_____